164 So.2d 111 (1964)
Aaron WALLACE, Plaintiff-Appellee,
v.
HANOVER INSURANCE COMPANY OF NEW YORK, N. Y., Defendant-Appellant.
No. 6067.
Court of Appeal of Louisiana, First Circuit.
April 6, 1964.
Rehearing Denied June 1, 1964.
Writ Refused July 1, 1964.
*113 Bienvenu & Culver, by Timothy J. McNamara, New Orleans, for appellant.
Ponder & Ponder, by L. B. Ponder, Jr., Amite, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
ELLIS, Judge.
The plaintiff instituted this suit against the defendant seeking to recover $6,000.00, representing the face value of a certain fire insurance policy issued by the defendant, covering the furniture and personal effects belonging to plaintiff and his wife, together with 12% penalties and attorneys fees of $3000.00 for defendant's arbitrary and capricious refusal to pay plaintiff's claim plus legal interest on the total amount. Judgment of non-suit was rendered below and both litigants have appealed.
The home of plaintiff was leased from third persons and was actually the rear portion of a building occupied as a saloon known as the Canopy Club on Highway #51 north of Kentwood, Louisiana. The building and all of its contents were totally destroyed by fire on July 3, 1960.
The insurance agency which had written the policy was immediately notified and on July 5, 1960 C. A. Branch, manager of the General Adjustment Bureau in Hammond. *114 Louisiana, visited the scene of the fire and discussed the claim with the plaintiff. During this visit Branch requested a list of goods which were destroyed, together with the values thereof. This list was subsequently furnished showing a detailed list of the goods which plaintiff claimed were destroyed in the fire together with a value opposite each separate object. Mr. Branch, after receiving the list on August 17, 1960, wrote a letter on September 2, 1960 to the plaintiff acknowledging the receipt of the list of personal effects contained in the Canopy Club and which were allegedly destroyed by fire and requested that plaintiff prepare a new list indicating the month and year of purchase, where purchased, "* * in order that we may verify purchase price and actual cash value. We cannot accept this list as presented." The record further reveals that Branch, when visiting the plaintiff on July 5, 1960, never furnished him with a proof of loss nor requested that he file one, but only asked for a list of the personal property allegedly lost in the fire. He visited the scene of the fire twice subsequently but did not have any conversation with plaintiff or his wife.
On September 1st, 1960 the plaintiff had employed his present attorney to represent him and the latter had written a letter to the insurance company demanding payment of the principal amount of $6000.00 plus penalties and attorneys fees. The matter was not adjusted and on September 22, 1960 plaintiff filed the present suit for the full amount of the policy in the sum of $6000.00 and also prayed for statutory penalties of 12% plus reasonable attorneys fees of $3000.00.
On October 1st, 1960 the defendant insurer filed an exception of pre-maturity and prayed that the suit be dismissed "* * * for the reason that he has failed to comply with the provisions of the policy of insurance sued upon which requires that he file a sworn proof of loss within sixty days after loss; that the provisions of the policy of insurance are part of the law of the State of Louisiana, LSA-R.S. 22:691; that until such proof of loss if (sic) filed and the provisions of the policy and the statute complied with, any suit under the policy of insurance is premature; that the filing of such proof is a condition precedent to the institution of any suit against defendant."
The exception was taken up before Judge H. R. Reid, then the District Judge in and for the Twenty-first Judicial District, and testimony was heard and with oral reasons dictated into the record the exception was overruled.
The defendant insurer filed an answer on May 4th, 1961 which was in the nature of a general denial of the plaintiff's petition except that it alleged specifically the failure and refusal of the plaintiff to comply with the requirements of the policy and the law by filing a sworn proof of loss, which made it impossible for "defendant * * * to determine what if anything plaintiff is entitled to recover under the policy," which was a repleading of prematurity of suit.
On May 8th, 1962 the case was duly and fully tried in the District Court before Judge Frederick S. Ellis and on the same date submitted to him for judgment.
On August 8th, 1962 the trial judge signed and filed his written reasons for judgment which he rendered on the 4th day of September 1962 in which he dismissed the plaintiff's action as of non-suit at his cost. This judgment was signed on the 22nd day of April, 1963.
There is also in the record a supplemental answer in which the filing date is written in pen and ink as "March 8-1963, Lida Morrison, Dy. Clerk." This supplemental answer by defendant averred in the alternative "that plaintiff is not entitled to recover herein because of the fact that he has violated the provisions of the policy of insurance which provide:
"`This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of *115 the insured therein, or in case of any fraud or false swearing by the insured relating thereto.'
"That plaintiff has misrepresented the facts concerning the loss allegedly sustained by him and has been guilty of fraud and false swearing and produced false evidence concerning the extent of his loss by introducing into evidence on the trial of this case a statement purporting to show that the loss sustained by him in the fire amounted to $20,992.50, which statement contains numerous items and alleged values, all known to plaintiff to be untrue and not in keeping with his loss; that his statement of loss is padded with the intent to deceive and defraud defendant.
"WHEREFORE, defendant prays that it have leave to file this supplemental answer, and, that in due course there be judgment herein in its favor dismissing the suit of the plaintiff with costs.
"And for all general and equitable relief."
The order prior to signature by the judgment who finally signed it stated: "Let the supplemental answer be filed in accordance with the law. Covington, Louisiana, May ___ 1962." Before signing the word "May" and "1962" were scratched through a number of times with ink and the date "March 15, 1963" inserted with pen and ink and the order then signed by "Warren W. Comish, Judge."
Counsel for the defendant insurer by statement made in his brief filed in this court has abandoned the plea of pre-maturity as he states it "may be pretermitted from consideration, for the complexion of this case radically changed when, on the trial of this case, Mrs. Wallace took the stand at the behest of her husband, the plaintiff herein, and for the benefit of them both and swore under oath as to the description of their personal effects and the evaluations of same contained on Exhibits P-3, through P-11. * * *" Therefore, the only defense offered to plaintiff's suit is as contained in the supplemental answer, supra.
Counsel for plaintiff on January 14, 1964 has filed in this court what he has termed "ORIGINAL MOTION TO STRIKE" which we quote:
"COMES NOW Aaron Wallace who moves this Honorable Court to strike from the transcript the supplemental answer, Transcript 28, for the reason that the same was not timely filed under appropriate order of the Court until after submission of the case upon briefs and after trial. The same was filed some ten (10) months after trial of this cause and after the matter was submitted to the Court upon briefs.
"In support of this motion mover refers to transcript page 8 which shows that the matter of this cause was tried May 8, 1962 and submitted to the Court whereas the supplemental, Tr. 28, was not filed until March 8, 1963 and the order to file same was signed by Judge Comish March 15, 1963, another division judge who did not try the case. Mover would further show that the reasons of the District Court were dated August 8, 1962 and filed September 4, 1962 and that said supplemental answer was filed after the reasons for judgment. This is further shown by examination of transcript, page 9, wherein is contained the minute entry dated September 4th, 1962 of the entry of the judgment based upon the written reasons, Tr. page 10, the motion for a new trial was argued and submitted even before the filing of the supplemental answer.
"PART II
"Mover moves to strike from the record of the supplemental answer for the additional reason that the same does not contain a certificate of service upon opposing counsel and should be stricken and expunged from the record as though not written.
"The La. CCP 1313, et seq. provides that all pleadings must have inscribed *116 upon it a certificate of service and that service must be effected upon the opposing counsel.
"Mover was at a loss to understand the reasons of the District Court that it was not until in the preparation of brief in this matter for the Court of Appeal that mover could understand how any such defense of misrepresentation got into this case.
"WHEREFORE mover prays that his motion to strike and expunge from the record the supplemental answer filed in Tr. 28, 230 be stricken and expunged from the record for the reasons heretofore recited and for other general and equitable relief in the premises."
Counsel for the defendant insurer has filed in this Court an affidavit and annexed thereto a copy of a letter which he stated was written on May 15, 1962 and sent to counsel for plaintiff together with a copy of his brief and supplemental answer. The letter carries no typewritten date but in ink "May 14, 1962". Such a defense was evidently raised in the brief of counsel for defendant insurer as the district judge, in arriving at a decision, discussed this defense. However, it is also clear that the supplemental answer contained an affirmative defense not touched upon or intimated in original answer, and even if we should disregard the date the order allowing its filing was signed by Judge Comish it could not be considered as having been filed any sooner than six days after the case was completely tried on the merits and all testimony submitted as of May 8, 1962. The following articles in LSA-Code of Civil Procedure, must be considered in arriving at a decision as to whether the affirmative defense contained in the supplemental answer could or should have been considered by the district court or this court, and we quote there from the following articles:
"Art. 1003. Form of answer. The answer shall comply with Articles 853, 854, and 863 and, whenever applicable, with Articles 855 through 861. It shall admit or deny the allegations of the petition as required by Article 1004, state in short and concise terms the material facts upon which the defenses to the action asserted are based, and shall set forth all affirmative defenses as required by Article 1005. It shall also contain a prayer for the relief sought. Relief may be prayed for in the alternative."
"Art. 1005. Affirmative defenses. The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation."
(Emphasis added)
"Art. 1151. Amendment of petition and answer; answer to amended petition. A plaintiff may amend his petition without leave of court at any time before the answer thereto is served. He may be ordered to amend his petition under Articles 932 through 934. A defendant may amend his answer once without leave of court at any time within ten days after it has been served. Otherwise, the petition and answer may be amended only by leave of court or by written consent of the adverse party.
"A defendant shall plead in response to an amended petition within the time remaining for pleading to the original pleading or within ten days after service of the amended petition, whichever *117 period is longer, unless the time is extended under Article 1001."
"Art. 1154. Amendment to conform to evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
"Art. 1155. Supplemental pleadings. The court, on motion of a party, upon reasonable notice and upon such terms as are just, may permit mover to file a supplemental petition or answer setting forth items of damage, causes of action or defenses which have become exigible since the date of filing the original petition or answer, and which are related to or connected with the causes of action or defenses asserted therein."
"Art. 1156. Amended and supplemental pleadings in incidental action. The petition, the answer, and the exceptions filed in an incidental action may be amended or supplemented in the manner provided in Articles 1151 through 1155."
It is therefore clear that an affirmative defense set forth in the answer or supplemental answer must be specially pleaded and among those set forth in Article 1005, supra, is "extinguishment of the obligation in any manner," "fraud", and "any other matter constituting an affirmative defense." This constitutes no change in the previous law and the cases are legion along with many which are cited under this Article that have so held. Furthermore, there can be no doubt but that the defense set forth for the first time in the supplemental answer filed after all the testimony in the case and the trial had been completed was an affirmative defense. It was not pleaded in the original answer and is therefore controlled by the articles dealing with amended and supplemental pleadings, supra.
The procedural law governing supplemental pleadings in Louisiana courts is to be found in Articles 1151-1156, supra, of the LSA-Code of Civil Procedure. These articles closely follow Federal Rule 15 on the same subject and for that reason reference to Federal materials is valid and helpful.
Articles 1152 and 1153 are not important to this case as they deal with amended exceptions and whether or not the amendment relates back to the original petition or answer.
According to Barron and Holtzoff, S 449, Federal Rule 15(b), two procedures are authorized for amending pleadings to conform to the evidence. The first is an amendment requiring no written or oral pleadings. The original pleadings are simply deemed amended to conform to proof of issues tried by express or implied consent. The second procedure authorizes the court to allow the amendment of pleadings where the evidence offered is objected to. This judicial power should be used freely where the cause of justice and judicial efficiency will be served and the other party is not thereby prejudiced.
In neither of these procedures is it necessary to require written amendments, or written motions to amend, if the need and permission for such an amendment arise *118 during the trial. Formal amendments could be later filed for the purpose of clarity.
Article 1154 embodies the first of the two federal procedures just mentioned. The comments indicate that because of the lack of opportunity to file written amendments when the evidence is introduced without objection, the court may, on motion of the party, allow amendment at any time, even after judgment. This is not startling, as the written amendment is actually unnecessary under both State and Federal systems. The pleadings may be treated as amended once the evidence enlarging them has been received without objection or the written amendment may be filed even after judgment.
This rule, however, is inapplicable against a party unrepresented by counsel, for in such a case the pleadings are not enlarged by unobjected to testimony. United States v. Hauck, C.C.A., 2nd 1946, 155 F.2d 141.
In order for 1154 to work, an automatic amendment of the pleadings, it is necessary that the evidence not be pertinent to any other issue raised by the pleadings in the case, and thus it would have been excluded if objected to timely. If the evidence is admissible for any purpose it cannot enlarge the pleadings except by express consent of the opposing party. (See comment B, Article 1154 and cases cited therein.)
Under the facts of the instant case, the evidence bearing on the value of the items of household furnishings was received without objection. However, this evidence went to the very heart of the plaintiff's case and was an essential item of proof. It was certainly admissible to prove value and only incidentally tended to bear on the defense of false swearing.
Therefore, under the authorities cited in comment B above referred to, this evidence cannot be considered to have enlarged the pleadings so as to set up an affirmative defense of fraud.
The case of Gallon v. Lloyd-Thompson Co., 8th, 1959, 264 F.2d 821, 77 A.L.R.2d 417 was not tried on a theory of fraud. The court held that evidence going to other issues, even if it did incidentally tend to establish fraud, could not be used to authorize an amendment alleging fraud offered at the close of the trial.
The second part of Article 1154 embodies the second Federal procedure and is applicable where evidence is objected to at the trial. Under this procedure the trial judge may allow an amendment to facilitate a full hearing on the merits, provided there is no prejudice to the opposing party. The comment found in our code, however, tends to limit this judicial power to a case where the amendment cures a defective pleading, excluding cases where the amendment seeks to raise a new cause of action or a new affirmative defense. The reason for this is that it is difficult to imagine a case where there would not be prejudice to the opposing party if new causes of action or new defenses were raised during the trial. The article does, however, authorize the trial judge to grant a continuance to allow the party to meet the evidence. The continuance itself, however, may be prejudicial to a party anxious to have his case heard and, therefore, the judicial discretion granted to allow amendments which raise new issues during the trial should be most closely guarded.
On the other hand, amendments during the trial which do not raise new issues but simply cure a pleading which was defective, should be most freely allowed and should materially assist the orderly administration of justice and promote judicial efficiency.
Applying this to the facts of this case, it is obvious that the attempted amendment raised a new affirmative defense, not during the trial, but after, affording plaintiff no opportunity to meet it. This is most *119 prejudicial and cannot be allowed. Had the motion to amend been presented during the trial, it might have been granted, saving to the plaintiff the right to a continuance to meet the new defense.
Article 1155 follows very closely the language of Federal Rule 15(d) and allows supplemental pleading (but not amendments) upon such terms as are just when necessitated by facts, claims or defenses which arise subsequent to the filing of the original petition or answer. The trial judge has broad power under this article and should exercise this power freely in order to promote the ends of justice.
A supplemental pleading is one which supplements, adds to or continues the original pleadings. "A `supplemental complaint' differs from an `amended complaint' in that the latter covers matters which occurred before the original complaint was filed and which were either overlooked by the pleader or were unknown to him at the time." Barron and Holtzoff, S 455, page 821 and cases cited therein.
The majority of the Federal decisions indicate that the supplemental pleading cannot be used to assert a new cause of action or defense. (Barron and Holtzoff, S 455, note 27) A few Federal decisions have adopted the opposite view. (Barron and Holtzoff, S 455, notes 28 and 29.)
Louisiana has definitely adopted the rule followed by the majority of the Federal decisions that the supplemental pleadings must relate to a cause of action or defense raised in the initial pleadings. This is made clear by a comparison of the Federal and State Rules. The latter adds the phrase "and which are related to or connected with the causes of action or defenses asserted therein."
Applying this to the facts of the case at bar, it can readily be seen that the defense of false swearing sought to be raised by the supplemental answer did not in any way enlarge, clarify or relate back to the defense of prematurity alleged in the original answer. Therefore, the supplemental pleading was improper and cannot be considered under Article 1155.
A second cogent reason for finding that the supplemental petition was not properly before the lower court is the rule that the parties have no right to file supplemental pleadings without leave of court, and only then "upon reasonable notice and upon such terms as are just," to the opposing party. This is clear from the language of Article 1155.
The requirement of reasonable notice to opposing parties implies a contradictory motion. Being a contradictory motion requiring an appearance, the rule must be served on the opposing party or his attorney of record in accordance with Article 1314 by the Sheriff.
In the instant case, the supplemental pleadings were not served by the sheriff, nor was there any rule issued to show cause why the supplemental pleadings should not be allowed. An ex parte motion was attached to the supplemental answer but even it was not signed until months after the trial and rendition of judgment and then by the judge in another division who had nothing to do with the case.
This procedure is insufficient to meet the notice requirement.
If this defendant's amendment alleging false swearing is to be considered at all, it must be found that the amendment was properly before the trial court under authority of Article 1151. We do not believe that it was.
Article 1151 is the general article permitting amendments by plaintiff or defendant, in certain specified cases which are not here important, and in other cases with leave of court. The article is silent as to the notice required, if any. The whole matter is left to the discretion of the trial judge.
*120 Article 1151 contains the following language dealing with amendment in cases not specifically covered:
"Otherwise, the petition and answer may be amended only by leave of court or by written consent of the adverse party."
The Federal rule on the subject, Rule 15(a), adds:
"* * * and leave shall be freely given when justice so requires."
It becomes necessary, therefore, to examine the circumstances in any given case to determine if that discretion was abused. Assuming that the order signed by the judge of another division was "leave of court", such leave would have been a serious abuse of discretion.
The plaintiff did not have any opportunity to meet the new issue of false swearing on the trial of the case. Nor would any party have the opportunity if the issue were raised only after the trial. Therefore, it can be categorically stated that a trial judge abuses his discretion granted under Article 1151 when he allows an amendment which raises a new issue or defense at such a time as not to afford the other party adequate time to prepare his case to meet the new issue or defense. United States v. United States Bank, 11 Rob. 418.
We quote from that case, at pages 428-429, as follows:
"It was objected to as presented too late, and because it had no connection with the original answer, or the matters at issue. We think the court below erred in permitting this document to be filed. It was certainly too late. Every issue should be made, and all answers filed, before the trial commences. It must be an uncommon case, to justify the filing of an amendment, * * * during the trial; and after the evidence is finished, it cannot be permitted."
It must also be said that prior to the time for the trial, it must be an uncommon case to justify denial of a motion to amend and for that reason such motions are not contradictory, reserving to any party aggrieved the right to have the amendment stricken.
The court can well foresee some instances where false swearing might arise during the trial of the case through perjury or from unexpected revelations of witnesses. In such a case, the trial judge might well be within his discretion to allow an amendment to the pleadings, raising a new issue, under Article 1151 or 1154, reserving to the other party the right to a continuance to secure the evidence necessary to meet the new allegations.
For the above and foregoing reasons the supplemental answer alleging extinguishment of the obligation because plaintiff has "misrepresented the facts concerning the loss allegedly sustained by him and has been guilty of fraud and false swearing and produced false evidence concerning the extent of his loss by introducing into evidence on the trial of this case statement purporting to show the loss sustained by him in the fire amounted to $20,992.50," etc., should not have been considered by the lower court and will not be considered by this court.
The only question remaining is whether plaintiff has borne the burden of proof necessary to entitle him to a judgment for the amount of the policy and penalties and attorney fees.
The facts as revealed by the record are neither long nor complicated. On April 27, 1960 the plaintiff obtained a policy from the Parker Insurance Agency, Inc. as agent of the defendant insurer, which was counter-signed by a Mr. Vaughan and was to expire in five years or on April 27, 1965, in the amount of $2500.00, "On personal furniture of Mr. and Mrs. Wallace; all while contained in the one story, frame approved roof building, occupied as a saloon *121 in front and dwelling in rear of building * * *". On June 10, 1960 there was an endorsement to the policy of April 27, 1960 for an additional amount of insurance for the sum of $3500.00 at an additional premium of $71.03 wherein "* * * total amount of policy now reads $6000.00, on all contents such as personal fixtures, food freezers, electric counter cooler; all while contained in above described building." This additional insurance was to expire on April 27, 1961 or one year from the date of the original policy. It is undisputed in the record that Mr. Vaughan, prior to the issuance of the additional policy, inspected the premises in which the insured property was located and being used by plaintiff and his wife. Upon objection the testimony with regard to the inspection by the agent of the Parker Insurance Agency, Inc. of Ponchatoula, La., who was the agent of the defendant insurer, was limited to the mere fact that Vaughan had made this inspection prior to the execution of the additional insurance in the sum of $3500.00. From the evidence we are convinced that the inspection by defendant's agent Vaughan was made for the purpose of evaluating the property and belongings of the plaintiff and his wife so as to satisfy him that the additional insurance was justified. Vaughan, the agent, was never placed upon the stand by the defendant insurer to deny that he made the inspection prior to the issuance of the additional coverage for the purpose of determining that the increase, which brought the total amount of insurance to $6000.00, was justified, and under the law such failure is to be construed against the defendant.
On the merits, the plaintiff's wife, who was the main witness as to the value and whom the record reveals was not educated to any great extent, and her husband only to the extent that he could sign his name, testified she had made the original list requested by Branch which was received on August 18, 1960 and introduced in evidence by the defendant, and which the trial judge suggested plaintiff's wife could follow in testifying to the contents of all articles claimed to come under the insurance policy contained in each room and which had opposite each article the estimated value in the opinion of the plaintiff's wife. Additionally, the trial judge suggested that after plaintiff's wife had so testified she be then tendered to counsel for the defendant for cross examination as to the articles listed and the value affixed thereto, all as shown by the list which the defendants were furnished and had in their possession since August 18, 1960 to the date of the trial on May 8, 1962. In accordance with the trial judge's wishes, the plaintiff's wife testified as to the contents of the living room and the value of each article, the dining room and value of each article, "1 bedroom spare, Ex. 6" and the value of each article contained therein; "P. Ex. 7", 1 bedroom with the contents and the estimated value of each article therein; "P. Ex. 8", a storage room together with each article therein and the estimated value placed upon the same; "P. Ex.' 9", kitchen with its detailed contents and value opposite each article therein; "P. Ex. 10", the barroom which shows it contained an electric beer box at $1395.00, a cook stove at $250.00, one heater at $50.00, three fans at $75.00 each or $225.00; "P. Ex. 11" which contained specific items of clothing with the value placed on each item and also clothing of the daughter with the value estimated opposite each item, and which list totalled a value of $20,992.50. Plaintiff's wife frankly testified a great deal of the furniture and items shown on the list were acquired by her during her first marriage of fifteen years, and during her second marriage, as well as some during her marriage to the plaintiff. Plaintiff's wife also testified she had obtained some furniture from an uncle she had lived with shown on the list as being in the storage room, consisting of two bedroom suites and one antique bed and dresser. She testified the amounts opposite each article shown on the list represented her idea as to the value of the property. There was corroborative evidence given by the daughter of plaintiff's wife to the fact there was a great deal of *122 furniture and other personal belongings in the house which are shown on the list filed in evidence. Plaintiff was not questioned on direct examination nor cross examination as to any details of acquisition of the property shown on the list other than generally as above stated. There is no testimony in the record offered in rebuttal of that given by plaintiff's wife.
The trial judge in his written reasons stated Mrs. Wallace was not qualified to testify to the value of the furnishings, clothing, and other articles destroyed in the fire and that the evaluations which she placed on these articles were greatly exaggerated and in some cases "bordered on the fantastic" and "so exaggerated as to verge on the ridiculous" and were so far removed from "reality that the court is unable to consider them as a basis of making an award in this case." This could be true but we do not find any proof of this evaluation of Mrs. Wallace's testimony in the written record. While we may think or believe she has over-estimated the value of the property, we agree with the trial court that she may "very well have been giving her honest opinion as to the values." We definitely do not gain the impression she was wilfully and knowingly swearing falsely, and we have no reason from this record to disbelieve Mrs. Wallace's testimony that the items shown on this list were destroyed in the fire. It was only necessary that a value of $6000.00 be proven. One thing definitely shown by this record is that the insurer did nothing whatsoever to assist the plaintiff in realizing the fulfillment of his contract of insurance. Rather than ask for a proof of loss it requested a list which it received on August 18, 1960 and did nothing about it until the fifty-ninth day after the fire when it wrote a letter asking for more specific information with regard to the value of the articles such as date of purchase, where purchased, and price paid. It used no legal means available to it to secure the information it had requested in the one letter which it wrote plaintiff with regard to the list. Neither did the insurer produce their agent who inspected the premises before issuing the policy in the additional amount of $3500.00. We do have a detailed list of the property which plaintiff claimed to have lost in this fire which was made and given to the insurer many months before the trial. If it is exaggerated there is nothing in the record to show it. Defendant would have this court to use its judgment dehors the record as a basis for finding these evaluations greatly exaggerated. We believe the record should contain evidence as a basis for such a finding. There is no dispute but that the plaintiff lost goods in the fire which were insured under the policy for which he should be paid. He has offered the best evidence he had without rebuttal or refutation. Considering the entire record we believe the plaintiff is entitled to a judgment for the full amount of the policy or $6000.00.
As for penalties and attorney fees, the defendant company having waived and abandoned its plea of prematurity and rested its defense solely upon the ground that the assured had sworn falsely with the intent to defraud it, by way of a supplemental answer which was not legally before the court, and based solely upon this defense it took its chances upon the judgment of this court on the question of its liability and, having been unsuccessful, the assessment of penalties and attorney fees follows as a matter of law. See Sbisa v. American Equitable Assurance Company, 202 La. 196, 11 So.2d 527, 145 A.L.R. 332 and cases cited therein; and Steadman v. Pearl Assurance Co., 242 La. 84, 134 So.2d 884.
Accordingly, there will be judgment in favor of the plaintiff, Aaron Wallace, and against the defendant, Hanover Insurance Company of New York, N. Y., in the full sum of $6000.00 with legal interest thereon from judicial demand, and further judgment in the sum of 12% as penalty on the amount of principal and interest, together with an attorney fee of $1000.00.
Reversed and rendered.