BOLIN, Judge.
This action was instituted by plaintiff Collins to recover for damages to pasture land allegedly caused by defendant’s oil well operations on the property. Collins was lessee under two agricultural leases from the land owners, and T. C. Morrow *235 was lessee of the mineral interests. Collins claimed, in addition to pasture damage, that he had suffered the loss of one steer. Defendant Morrow answered with a general denial and filed a third-party demand against his lessors in the event he should be held liable for damages. Following trial the lower court awarded judgment in favor of Collins and against defendant Morrow for $98.28 for the loss of the steer. All other demands were rejected and plaintiff appeals.
The first agricultural lease covering forty acres, contained the provision, “This Lease is made subject to and does not include, and shall in no way interfere with any surface Lease executed by this Lessor to the Magnolia Oil Company.” This lease was later amended to include that portion of the property formerly occupied by Magnolia for an increased consideration and extended the lease through December 31, 1974. By a separate lease the co-owners of the adjacent 51.45 acres leased to Collins, for pasturage and grazing of livestock, for a term of five years beginning January 1, 1968, ending December 31, 1972. The provisions in this instrument imposed the requirement, “Lessee’s rights hereunder are further subject to whatever use lessors or their assigns make of the property for prospecting or developing for oil, gas and other minerals, full rights of ingress and egress for these purposes being expressly reserved to lessors.”
The oil and gas lease under which the Morrow Company drilled the three wells involved herein was executed in 1962. The testimony as to when the drilling was commenced and the wells completed is vague, the only positive testimony being statements of Mr. Porter that at least two wells were drilled in 1965 (well #43 and well #45) and #51 was drilled in late 1967. This witness also testified the road to #43 was graded within six months after completion of that well.
Over objection of plaintiff an amended and supplemental answer was filed, with leave of court, during trial. This answer sets forth that the claims for damages, upon which plaintiff’s present suit is predicated, were compromised in August 1966. In support of the affirmative plea of compromise, defendant introduced in evidence a letter and a check for $500. The voucher attached to the check recited it was in full settlement of “damages caused by drilling our Pugh Well numbers 43 and 45, breakage of oil lines and drainage ditches”. Collins admitted receipt of this check but denies it was intended as settlement of claims for damages occurring subsequent to August 1966 and before suit was filed in May 1968.
Specified by appellant as errors are the following:
“1: The court erred in permitting the defendant to file a supplemental and amended answer during the trial of the matter.
“2: The court erred in permitting the defendant to offer a compromise in evidence after the trial had begun when such pleading was pleaded only in a supplemental and amending answer filed after the trial had commenced.
“3: The court erred in holding that the sum of $500.00 paid plaintiff by defendant by check dated August 3, 1966, was in settlement and compromise of the matter sued for herein.
“4: The court erred in not granting plaintiff judgment as prayed for.”
Since the first two specified errors relate to the admissibility and effect of the alleged compromise we shall consider them together. Appellant relies on Louisiana C. C.P. Art. 1005, which requires the defense of compromise to be affirmatively pleaded, and on Louisiana C.C.P. Art. 1151, which provides:
“A plaintiff may amend his petition without leave of court at any time be *236 fore the answer thereto is served. He may be ordered to amend his petition under Articles 932 through 934. A defendant may amend his answer once without leave of court at any time within ten days after it has been served. Otherwise, the petition and answer may be amended only by leave of court or by written consent of the adverse party.
“A defendant shall plead in response to an amended petition within the time remaining for pleading to the original pleading or within ten days after service of the amended petition, whichever period is longer, unless the time is extended under Article 1001.”
Appellant contends the trial court abused its discretion by allowing the amended answer to be filed during trial. He ascribes as the reason for not permitting filing of an amended answer which pleads an affirmative defense during the trial is to prevent the opposing party from being taken by surprise and cites two cases to support his position. In the first cited case, Wallace v. Hanover Insurance Company of New York (La.App.l Cir.1964) 164 So.2d 111, the amended answer (pleading the affirmative defense of fraud) was filed after the trial had ended and judgment rendered, and apparently without notice to opposing party. The court held it was an abuse of discretion to allow the filing of the amended answer but stated:
“Applying this to the facts of this case, it is obvious that the attempted amendment raised a new affirmative defense, not during the trial, but after, affording plaintiff no opportunity to meet it. This is most prejudicial and cannot be allowed. Had the motion to amend been presented during the trial, it might have been granted, saving to the plaintiff the right to a continuance to meet the new defense.” (Emphasis added)
At the conclusion of the trial in Brooks v. Fondren (La.App.3 Cir.1967) 199 So.2d 588, defendant filed an exception of no cause of action on the ground the evidence showed there had been a compromise. The court held the trial court had abused its discretion in permitting the filing of the exception, citing Wallace, supra, and Louisiana. C.C.P. Art. 1154. The portion of Art. 1154 which is pertinent to the instant case provides:
“ * * * If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.”
We conclude the cited cases are factually distinguishable from the case before us and the court was correct in allowing the amended answer. Although plaintiff did not ask for a continuance the case was held open for more than a week in order for plaintiff to complete his case. It is not contended plaintiff was denied an opportunity to meet the defense, nor did plaintiff deny that the $500 payment was received for damages suffered by the drilling of wells #43 and #45.
Plaintiff urges, in the event the court finds the supplemental answer was proper and admissible, the court should allow recovery for all damages occurring from negligent operation of the wells subsequent to August 1966. Testimony supporting the allegation that the damages sued for herein are entirely different from those delineated in the compromise will be briefly reviewed.
Mr. Collins, plaintiff, testified he had possessed the acreage under an agricultural lease for fourteen years; that part of the property was formerly a lake but that he put in a system of drainage ditches which had drained the water into either *237 Shingle or Cypress bayou; that he had seeded it, limed it and made a permanent pasture on it. Prior to the drilling by defendant he had been able to mow the pasture and drive over it in pickup trucks. At the time of trial the graded road to well #43, the presence of exposed pipe and the poor drainage inhibit mowing which in turn allows weeds to grow in the unmowed area, and these weeds encroach on and spoil the adjacent pasture.
A Louisiana Fisheries and Wildlife agent testified he inspected three oil wells on the subject lease on March 14, 1968, and found salt water and oil waste leaking from the “stuffing box” on the first well designated-as #43. He testified the waste had killed the grass around that well. He testified further he took pictures of the first well, which caused the major portion of the damage, and these pictures were introduced into evidence. He estimated approximately five acres of pasture had been damaged from this one well. He made no estimate of the damage caused by the other two wells. The witness testified he had not returned to the well-sites for further inspection. He was equivocal in answer to the questions on cross examination regarding the condition of the drainage ditch from this well, as well as to whether the grass was dead or had just not yet turned green.
Another witness, employed by the Louisiana Department of Conservation as an oil and gas inspector, testified he checked the wells on the leased property and found a considerable amount of waste oil and an undetermined amount of salt water at well #43. He had made his first inspection approximately three years prior to trial and the last one about a week before trial. He corroborated the first witness’ statement that there was a leaking “stuffing box” and oil on the ground around the well-bore on his first inspection. However, at the time of the most recent inspection that well was shut down and there was no leaking. At that time he inspected well #45. He testified he found no leaking but that he found some waste oil around the well-bore and evidence of oil having run down beside the hill to the bayou, but stated it was old oil. This witness did not inspect the third well. On cross examination he testified the amount of oil formed around an ordinary worked well would average about fifteen feet in diameter and that this well (#45) was average.
The crux of this case is whether or not plaintiff has suffered additional damage after the compromise and, if so, its cause and extent.
The testimony regarding the alleged damage is vague as to whether it occurred prior to or after the compromise. In addition, we are unable to determine with exactitude the extent of the damage or the cause therefor, i.e., whether through defendant’s negligence or because of necessary acts committed in drilling under the lease.
Since plaintiff’s agricultural leases expressly provide that his rights are subject to whatever use lessors or their assigns make of the property for prospecting or developing for oil, gas and other minerals, full rights of ingress and egress for these purposes being expressly reserved to the lessors, we conclude plaintiff has failed to show by a preponderance of evidence that defendant was guilty of negligence which caused plaintiff any damage other than that covered by compromise. Since defendant has neither appealed nor answered the appeal we are not authorized to grant him affirmative relief.
For the reasons assigned the judgment, awarding plaintiff $98.28 for one steer, is affirmed, appellant to pay the cost of this appeal.