526 So.2d 237 (1988)
Charles ALONZO and CPA Construction Company
v.
Frank CHIFICI, Deanie's Restaurant, Inc. and Deanie's Take-Out, Inc.
No. 87-CA-738.
Court of Appeal of Louisiana, Fifth Circuit.
April 18, 1988.
Writ Denied June 2, 1988.
*238 James E. Shields, Gretna, for plaintiff-appellee Charles Paul Alonzo.
David C. Loeb, Susan M. Chehardy, William C. Harrison, Jr., Gauthier, Murphy, Sherman, McCabe, Chehardy & Ellis, Metairie, for defendants-appellants.
Before KLIEBERT, GRISBAUM and GOTHARD, JJ.
KLIEBERT, Judge.
Frank A. Chifici, Barbara A. Chifici, Chifici Enterprises, Inc., d/b/a Deanie's Seafood Restaurant, Deanie's Seafood Carry Out Restaurant, Inc. and the Estate of Frank A. Chifici appeal suspensively from a judgment in favor of Charles Paul Alonzo and CPA Construction Co., Inc. in the amount of $328,660.80 for what the trial court characterized as the balance due on an open account, penalties, and attorneys fees arising out of the renovation of a restaurant at 1713 Lake Avenue in Metairie. For the reasons which follow we reverse the judgment of the trial court.
In April of 1982 Frank Chifici purchased "Deanie's Seafood, Inc.," a corporation which operated a restaurant at 1713 Lake Avenue in Metairie. "Deanie's Seafood, Inc." was liquidated and the business re-established as "Chifici Enterprises, Inc." in which Frank Chifici was the President and owner of a 72.3% interest. The remaining 27.7% was owned by co-investors.
In 1983 Frank A. Chifici directed the renovation (leasehold improvement) of the premises. He solicited the assistance of Charles Alonzo, a contractor who was overseeing the construction of Chifici's home on Teton Street and renovations at "Chifici's Restaurant" at 404 Magazine Street. Alonzo was the president and sole owner of CPA Construction Company, Inc. During the course of the 1713 Lake Avenue renovations, Frank Chifici underwent treatment for cancer and was absent on frequent occasions. The restaurant remained open during the renovations, which took approximately one year and were completed in September of 1984. In July of 1985 Alonzo and CPA Construction Co., Inc. filed suit for monies allegedly owed to them.
The initial petition filed by Charles Alonzo and his corporation, CPA Construction Co., Inc. was entitled "Breach of Agreement, Services Rendered, and Damages" and named as defendants Frank Chifici, "Deanie's Restaurant" and "Deanie's Takeout."[1] Plaintiffs alleged they entered into an agreement with Frank Chifici to renovate the premises at 1713 Lake Avenue and 404 Magazine Street and had acted as a contractor and renovated the premises, but had not been paid for his services, which he valued "in excess" of $300,000.00. Alternatively, plaintiffs sought recovery for unjust enrichment in the same amount. Plaintiffs also sought damages for breach of the agreement.
Frank Chifici died on September 3, 1985, less than two weeks after he was served with a copy of the petition. Plaintiffs thereafter amended the original petition to name as defendants Frank Chifici, Chifici Enterprises, Inc., d/b/a Deanie's Seafood, and Deanie's Seafood Carry-Out Restaurant, Inc., and to allege that the defendant corporations were the alter ego of Frank Chifici, who at all times was authorized to act on behalf of the corporations.
After a discovery period for which the term adversarial is an understatement, an answer in the form of a general denial was *239 filed on behalf of the defendant corporations and the estate of Frank Chifici through its administrator, Barbara Chifici. A pre-trial memorandum by "Paul Alonzo d/b/a CPA Construction Co., Inc., a construction general contractor" explained that although he was paid a "substantial" sum for the "three jobs," material and labor costs, much less the normal profit of a contractor "were not recovered," and the outstanding balance of $500,000.00 was "acknowledged" by Frank Chifici on "several occasions."
Trial commenced on September 4, 1986. Alonzo introduced several "final invoices" for the work on the three projects which he said were approved by Frank Chifici at a meeting on December 20, 1984. During the course of plaintiffs' case in chief the trial judge allowed defendants to orally amend their answer to specifically plead the affirmative defense of extinguishment and illegality of contract, and to advance a reconventional demand for repair costs related to allegedly defective workmanship.[2] Trial was continued at the request of defense counsel, and on September 11, 1986 defendants filed an amended answer wherein they acknowledged "plaintiff" performed a portion of the renovations to the premises operated by Chifici Enterprises, Inc. (Deanie's Seafood Restaurant) pursuant to a verbal agreement with Frank A. Chifici, who was acting in his capacity of president of Chifici Enterprises, Inc. Defendants averred plaintiffs received $353,000.00 for their efforts for a net profit of $64,900.00 (23%) and reconvened against plaintiffs on the grounds:
(1) Plaintiffs were unlicensed contractors and not entitled to profits;
(2) Plaintiffs diverted funds from the renovation project for the purpose of constructing his personal residence in Slidell;
(3) Plaintiffs failed to perform in a workman-like manner, necessitating repair costs of $150,000.00
On November 10, 1986 plaintiffs filed a supplemental and amending petition seeking $470,391.21 for "Breach of Agreement, Services Rendered Damages and Alternatively Suit on Open Account Interest and Attorney Fees." The amounts due under alternative theories of recovery were enumerated as follows:

(1) Direct and Consequential Damages
 for Breach of Agreement,
 Loss of Revenue $202,435.42
 Mental Anguish, Loss of Future
 Earnings 267,859.79
 ___________
 $470,391.21 (sic)
(2) Unjust Enrichment 470,391.21
(3) Non-payment on Open Account
 17 Teton 267,995.79[3]
 1713 Lake Avenue 196,160.51
 404 Magazine Street 6,274.91
 __________
 $470,391.21 (sic)

Defendants filed an answer in the form of a general denial.
The trial court rendered judgment in favor of Charles Alonzo and CPA Construction Company, Inc., and against Frank Chifici, Barbara Chifici, Chifici Enterprises, Inc., Deanie's Seafood Carry-Out Restaurant, Inc., and the estate of Frank Chifici. In reasons for judgment the court enunciated its finding that an oral contract existed between Alonzo and Chifici to renovate 1710 (sic) Lake Avenue and that Alonzo performed in a workmanlike manner.[4] The court characterized the contract as an open account because Alonzo billed costs to "Chifici's" account, who made payments on the balance due. The court concluded Alonzo was entitled to "the balance due ... penalties and attorney's fees" totaling $328,660.80. Finally, the court found the evidence produced at trial warranted piercing the corporate veil and declared the defendant *240 corporations to be the alter ego of Barbara and Frank Chifici.
At the outset we note that the judgment as against two of the judgment debtors is an absolute nullity. Barbara Chifici was not a named defendant and cannot be cast in judgment. Luneau v. Hanover Ins. Co., 478 So.2d 752 (La.App. 3rd Cir.1985); Champagne v. Lee, 470 So.2d 378 (La.App. 5th Cir.1985). Frank A. Chifici died prior to judgment, and a judgment cannot be rendered for or against a deceased person. White v. Givens, 491 So.2d 63 (La.App. 1st Cir.1986). Accordingly, the portion of the judgment naming Barbara Chifici and Frank Chifici as judgment debtors is declared a nullity and is vacated and set aside. Thus, the only remaining valid defendants are the estate of Frank Chifici, Chifici Enterprises, Inc., and Deanie's Seafood Carry-out Restaurant, Inc.
We attempted to compute how the trial court arrived at the award of $328,660.80 but were unable to do so. The amount claimed on open account for 1713 Lake Avenue was $196,160.00, and the maximum possible penalty under LSA-R.S. 9:2784 was $29,424.00 (15%). Thus, the attorney's fees would exceed $100,000.00. At our request the parties submitted post-argument memorandums on the issue; neither side was able to explain how the amount of the award was determined. Defendants averred the multitude of figures bandied about by plaintiff in his pleadings and when testifying at trial makes it impossible to determine the manner in which the total award was computed. Plaintiffs launch into a discourse whereby they take the invoiced amount for 1713 Lake Avenue ($196,160.00) and add various percentages of profit and overhead to reach totals approximating $328,000.00; however, contrary to counsel's contentions, profit and overhead were figured into the "open account" invoice, as evinced by Alonzo's trial testimony.[5] Thus, neither side is able to provide any insight as to how the award was computed. In any event, we find that the record does not support an award in plaintiff's favor.

THE CONTRACT
That an oral contract existed for the renovation of 1713 Lake Avenue was admitted by the defendants. The trial court concluded the parties to the contract were Charles Alonzo and Frank Chifici. We agree these two individuals made the agreement, but in their capacity as corporate presidents rather than as individuals. Alonzo was aware Frank Chifici was president of the corporate entity which owned the restaurant and that there were other shareholders. Alonzo averred in his original petition that Chifici had the authority to enter into the agreement on behalf of Chifici Enterprises, Inc. The checks issued in payment for the work were drawn on the Chifici Enterprises, Inc. account and bore that name. Alonzo testified he personally made deposits of sales receipts from the restaurant operations into the corporate account when Chifici was out of town due to illness. The pleadings and evidence reflect that Frank Chifici acted in his capacity as president of Chifici Enterprises, Inc.
Likewise, the checks issued by Alonzo to suppliers and laborers were drawn on the account of CPA Construction Co., Inc. The "invoices" allegedly submitted by Alonzo to Frank Chifici bore the CPA Construction Co., Inc. logo. The checks issued by Chifici Enterprises, Inc. named as payee CPA Construction Co.[6] Plaintiffs confuse the issue by referring to themselves as Charles Alonzo d/b/a CPA Construction Co., Inc., and by never committing themselves to a position as to who were parties to the contract. The exhibits and testimony introduced at trial reflect that CPA Construction Co., Inc. was the second party to the contract.
*241 The trial judge characterized the contract as a sale on open account (as a contract to give) because, according to Alonzo's testimony, the cost of materials, labor and supervision were billed to Chifici, who made payments on the balance due. However, the agreement, as explained by Alonzo, fits the definition of a contract to build (a contract to do) as defined by La. C.C. Articles 2756 and 2757:
"To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price."
"A person who undertakes to make a work, may agree, either to furnish his work and industry alone, or to furnish also the materials necessary for such a work."
Although the Civil Code clearly contemplates a distinction between sales and construction contracts, it defines the contract of sale in very general terms. The judiciary has developed several tests for determining whether a given contract is a contract of sale or a construction contract. In Acadiana Health Club, Inc. v. Hebert, 469 So.2d 1186, 1189 (La.App. 3rd Cir.1985) the court notes:
"[1] There are three major factors in determining whether a contract is a contract of sale or a contract to build or to work by the job. First, in a contract to build, the "purchaser" has some control over the specifications of the object. Second, the negotiations in a contract to build take place before the object is constructed. Lastly, and most importantly, a building contract contemplates not only that the builder will furnish the materials, but that he will also furnish his skill and labor in order to build the desired object. Duhon v. Three Friends Homebuilders Corporation, 396 So.2d 559 (La. App. 3 Cir.1981); Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961)."
Under the "value test" the court determines whether the labor expended in constructing the item, or the materials incorporated therein, constitute the "principal value of the contract." Price v. Huey Childs Builder, Inc., 426 So.2d 398 (La.App. 2nd Cir.1983) writ denied 433 So.2d 164 (La.). Building or construction contracts involve primarily the furnishing of labor and contractual skills.
In the present case Chifici maintained control over the scope of the renovation project, changing plans, specifications, subcontractors and material suppliers, at will, as the work progressed. All negotiations on the individual "items" completed by Alonzo were conducted before work commenced on the item. Finally, Alonzo furnished labor and skill as well as materials, and his principal value to Chifici was as supervisor over certain segments of the renovation project. Thus, the contract between CPA Construction Co., Inc. and Chifici Enterprises, Inc. was a construction contract rather than a sale on open account.
We find support for this conclusion in Kenner Industries v. Sewell Plastics, 451 So.2d 557 (La.1984) (suit for payment on sand subcontract was not a suit on open account); Ellis Millwork, Inc. v. Frees, Inc., 493 So.2d 696 (La.App. 2nd Cir.1986) (cost-plus contract to install dust collector was a building contract rather than open account); AA Specialty & Supply, Inc. v. Quinn, 411 So.2d 1165 (La.App. 1st Cir. 1982) contract for sale and installation of a fireplace is a construction contract rather than open account); Duhon v. Three Friends Homebuilders Corp., 396 So.2d 559 (La.App. 3rd Cir.1981) contract to construct home was a construction contract rather than a contract of sale); Troendle v. Boudreaux, 246 So.2d 732 (La.App. 4th Cir.1971) (amounts general contractor owed subcontractor for work performed did not constitute open account.)
The truly difficult task faced by the trial court was to piece together the terms of the oral construction contract in light of the death of the representative of Chifici Enterprises, Inc., Frank Chifici. CPA Construction Co., Inc., through its representative, Charles Alonzo, bore the burden of proving the terms of the contract by "at least one credible witness and other corroborating circumstances." La.C.C. Article *242 1846;[7]Samuels v. Firestone Tire & Rubber Company, 342 So.2d 661 (La.1977); Executive Recruitment, Inc. v. Reed and Carnrick Pharmaceuticals, 474 So.2d 473 (La.App. 4th Cir.1985). We find it unnecessary to inquire as to whether plaintiff met its burden of proving the terms of the contract, for we find merit in defendants' contention the contract was illegal.
LSA-R.S. 37:2150 et seq., establishes a state licensing requirement for contractors as a protective measure for the general public. Section 2157 provides as follows:
"A. (1) For the purpose of this Chapter, a contractor is defined as any person, firm, partnership, copartnership, association, corporation, or other organization, or any combination thereof, who undertakes, attempts, or submits a bid or offer to construct, supervise, superintend, oversee, direct or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, material, or equipment and installing same for any building, highway, road, railroad, sewer, grating, excavation, pipeline, public utility structure, project, development, housing, or housing development, improvement, or any other construction undertaking for which the cost of same is fifty thousand dollars or more.
(2) The provisions of this Chapter shall not apply to a residential building contractor. For the purposes of this Chapter, a residential building contractor is defined as any person, firm, partnership, copartnership, association, corporation, or other organization, or any combination thereof, whose services are limited to construction, remodeling, repair, or improvement of single family residences, duplexes, triplexes, or fourplexes.
B. There are excepted from the provisions of this Chapter any public utility providing gas, electric, or telephone service which is subject to regulation by the Louisiana Public Service Commission or the council of the city of New Orleans, or to any work performed by such public utility in furnishing its authorized service.
C. The provisions of Subsection A above shall not apply to:
(1) Owners of property who supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement demolition, putting up, tearing down, or maintenance of any building, railroad excavation, project, development, improvement, plan facility, or any other construction undertaking, on such property, for use by such owner and which will not be for sale, rent, public use or public assembly.
(2) Persons donating labor and services for the supervision and construction of churches. Providing further, that the provisions of this Chapter shall apply to any contractor employed by said owner and persons donating labor and services under Paragraph (1) and (2) of this Subsection."
Section 2160(A) provides:
A. It shall be unlawful for any person to engage or continue in this state in business of contracting, as defined in this Chapter, without having qualified as a contractor under the provisions of this Chapter.
At trial Alonzo admitted neither he nor CPA Construction Company, Inc. held a contractor's license. He contended Frank Chifici was the general contractor and, in any event, he could have used the contractor's license issued to Brookfield Land Company, a development and construction company of which he was vice-president.
*243 The fact that Frank Chifici may have acted as the general contractor did not relieve Alonzo and/or CPA Construction Company of the burden of securing a contractor's license, for "contractor," as contemplated by the licensing statutes, includes "a person who contracts directly with the owner, a primary contractor, or a subcontractor as a subcontractor. Section 2162. Moreover, Brookfield Land Company was not a party to the contract, and any license held by it was not transferable to Alonzo and/or CPA Construction Company. Section 2156(D).[8]
Plaintiffs contend they were not required to secure a contractor's license because no overall bid was submitted on the project, but rather, he bid on individual "items" as work progressed and money became available, and none of the "items" exceeded $50,000.00. However, plaintiffs' own invoice (P-1) shows three "items" which exceeded $50,000.00. Moreover, it is clear from Alonzo's testimony that he was aware from the inception of the renovation project that the cost would far exceed $50,000.00; Alonzo testified a bid of one million plus dollars had been submitted by another contractor. To allow Alonzo to skirt the licensing requirement by splitting the project up into separate "items" under $50,000.00 would defeat the purpose of the statute, would sanction its violation, and would remove for the general public the umbrella of its protection.
R.S. 37:2150 et seq. prohibits any person or entity from engaging in the business of contracting without having qualified as a contractor under the provisions of the chapter. As a prohibitory law the licensing provisions cannot be avoided by private agreement. La.C.C. Article 7. Hagberg v. John Bailey Contractor, 435 So.2d 580 (La.App. 3rd Cir.1983) writ denied 444 So. 2d 1245 (La.1984). Whatever contracting agreement was entered into by Chifici Enterprises, Inc. and CPA Construction Co., Inc. is in contravention of a prohibitory law and is void. Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943); Hagberg, supra.

UNJUST ENRICHMENT
Although the contract is in violation of prohibitory law and is illegal, it would be unjust to allow Chifici Enterprises, Inc. to escape liability for payment of the actual cost of materials, services and labor while reaping the benefits of the renovations. La.C.C. Article 2055; Boxwell, supra; Hagberg, supra. However, plaintiffs are not entitled to an allowance for profit and overhead. As stated by the Boxwell court and quoted with approval in Hagberg, supra, 435 So.2d at page 587:
"An enforced settlement of this kind not only does justice and equity between the parties, but also it provides the protection... that the statute under consideration contemplates. At the same time it is notice to contractors and furnishers of materials that their dealings in the future... must be conducted in accordance with the law's provisions; otherwise the anticipated profits and attendant expenses will be denied them and their efforts will go for naught."
At trial, counsel for both litigants stipulated that if Alonzo was called to testify as to each of the checks in en globo exhibit P-8A, he would identify each check as a payment he made for the renovation of 1713 Lake Avenue, and that the aggregate of the checks was $288,387.51. The aggregate sum did not include check No. 348 for $1,154.21, and included only one-half of check No. 409 for $1,377.74, because the enumerated checks were issued in payment for labor and materials at Teton Street and 1713 Lake Avenue.[9] Counsel agreed that one-half of check No. 409 would be charged to 1713 Lake Avenue. However, no agreement was reached as to check No. 348, and Alonzo did not attempt to apportion the funds between the two properties. As it *244 was Alonzo's burden to prove his expenses for the Lake Avenue renovations, we deny recovery for check No. 348. Thus, by our calculations the aggregate sum of the checks which Alonzo proved were issued for Lake Avenue was $288,257.55.
On the second day of trial, Alonzo testified that "As I stated yesterday" cash expenditures of $6,000.00 were incurred. However, Alonzo had not previously testified that he incurred cash expenditures. Alonzo did not produce receipts for the cash expenditures, and although he did introduce as en globo exhibit P-9 794 invoices allegedly pertaining to the Lake Avenue renovations, he did not attempt to match payments to invoices, nor did he introduce the invoices for the purpose of establishing his expenses. We disallow Alonzo's claim for cash expenditures for lack of proof thereof. Alonzo also identified check No. 306 as a $5,000.00 payment by CPA to Julius Wise for carpentry work at Teton Street and Lake Avenue. Alonzo did not attempt to apportion the funds between the two locations. Moreover, check No. 306 is not included in the exhibits either separately or in en globo exhibit P-8A. A notation on the exhibits index indicates the check was to be submitted by plaintiff's counsel. Accordingly, we deny Alonzo's claim for the elusive check No. 306.
When trial reconvened after a three month recess Alonzo testified several accounts were still outstanding for the renovation work at Lake Avenue. According to Alonzo he owed E.T. Malbrough $11,900.00 for plumbing work, David Steece $3,500.00 for supervision, David Rodrigue $3,000.00 for carpentry work, and Branchie Thornton $360.00 for cement work. However, defendants introduced evidence in the form of a copy of a petition and citation served on Chifici Enterprises, Inc. by Malbrough for labor and materials; thus, Malbrough sued Chifici Enterprises directly for the outstanding balance. And, David Steece testified he "might have been" to Lake Avenue "a couple of times" while acting as superintendent on Teton Street (Chifici's residence) and at "Monticello" (Alonzo's Pearl River residence); thus, the testimony of Steece contradicts Alonzo's testimony he was owed $3,500.00 for supervision at Lake Avenue. Of the remaining accounts of $3,360.00 which Alonzo testified were outstanding, no contradictory evidence was offered; accordingly, we will allow Alonzo recompense for the claims.
In recapitulation, the evidence produced at trial established at best that Alonzo's expenses for material and labor for the Lake Avenue property were $291,617.55 ($288,257.55 checks + $3,360.00 outstanding accounts). Alonzo claims (See Exhibit P-1) he is entitled to $60,000.00 for forty weeks of personal supervision for the renovation, the equivalent of $1,500.00 per week. Mr. Lloyd Rittiner, Jr., who was accepted as an expert in the field of construction estimation and renovation, testified that $1,500.00 per week was the minimum for a qualified superintendent to do a job subject to the contingencies which existed on Lake Avenue. When the supervision cost is added to the proven costs for materials and labor, the aggregate sum recoverable under an unjust enrichment theory is $351,617.55. Against this sum must be credited the payments made by Chifici Enterprises, Inc.
Alonzo testified he received $531,963.37 from Frank Chifici for the three projects (Teton Street, Lake Avenue and Magazine Street) and out of this amount applied $297,839.49 ($291,839.49 in checks and $6,000.00 in cash) to the renovations at 1713 Lake Avenue. Defendants produced checks totaling $317,300.00 drawn on the Chifici Enterprises, Inc. account, payable to AMA and CPA Construction Company. Alonzo admitted he received $36,000.00 in cash from Frank Chifici, funds which, according to his testimony, he knew came from the cash register receipts of Deanie's Restaurant. Thus, we conclude the payments made by Chifici Enterprises, Inc. for the renovations at 1713 Lake Avenue total $353,300.00.
Alonzo testified he applied only $297,839.49 of the Chifici Enterprises money to the renovations at 1713 Lake Avenue. The implication of this testimony is that $55,460.51 of the Chifici Enterprises funds were applied to the Teton Street and Magazine Street projects. Alonzo offered no corroboration that this disbursement procedure was authorized by Frank Chifici, and *245 Alonzo's testimony is discredited in light of the near perfect match between proven expenditures and reimbursements and the testimony of various defense witnesses that Frank Chifici vehemently denied owing Alonzo any money for the renovations.
Moreover, as neither # 17 Teton Street nor 404 Magazine Street was owned nor operated by Chifici Enterprises, Inc., its funds could not be applied to those projectseven at Frank Chifici's request for a corporate officer has no authority in the absence of a specific resolution from the board of directors of the corporation to pay from the corporate funds the debts of a third party. First Nat. ect. v. Pine Belt Producers Co-op, 363 So.2d 1201 (La.App. 2nd Cir.1978) writ denied 365 So.2d 262 (La.). And LSA-R.S. 9:3805 provides:
"If a check or other bill of exchange is drawn by a fiduciary as such or in the name of his principal by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in drawing or delivering the instrument and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. If, however, such instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of, or as security for, a personal debt of the fiduciary, to the actual knowledge of the creditor, or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the instrument."
See also Guaranty Bank & Trust of Alexandria v. C & R Development, 260 La. 1176, 258 So.2d 543 (1972). Thus, even assuming Frank Chifici told Alonzo to apply Chifici Enterprises, Inc. funds to the Teton Street and Magazine Street projects, Alonzo is liable to Chifici Enterprises, Inc. for the funds, for he knew the funds were Chifici Enterprises, Inc.'s.
When the Chifici Enterprises, Inc. payments of $353,300.00 are applied to the proven expenses of $351,617.55, there is an apparent "overpayment" of $1,682.45.[10] However, in light of the confusion surrounding check No. 306 and our ruling as to check No. 348, and in consideration of the relatively small amount of the "overpayment" in light of the $350,000.00 expenditures, we are hesitant to order CPA Construction Co., Inc. to refund the excess.
The trial court rejected the defendants' reconventional demand for the sums expended in repairing the floor. We cannot say this was error, for the evidence shows conclusively that Frank Chifici insisted on, negotiated for, and refused to heed the seller's warnings relative to the now-claimed defective flooring.
Accordingly, in the interest of justice, we simply reverse the judgment of the trial court and dismiss the proceedings with each party to bear his own cost.
JUDGMENT REVERSED;
PROCEEDINGS DISMISSED.
NOTES
[1] Alonzo has a separate suit pending against Barbara Chifici and (The estate of) Frank Chifici for monies allegedly owed for the construction of the Teton Street residence. Docket No. 314-370 of the Twenty-fourth Judicial District Court.
[2] Plaintiffs contend in appellate brief that the trial court erred in allowing the amendments on the second day of trial. The contentions are without merit for it was in the trial court's discretion to permit the amendment. La.C.C.P. Article 1151; Collins v. Morrow, 234 So.2d 234 (La.App. 2nd Cir.1970); Breaux v. Co-Operative Cold Storage Builders, Inc., 187 So.2d 1 (La.App. 1st Cir.1966) writ denied 249 La. 711, 190 So.2d 232.
[3] We reiterate that the Teton Street residence is the subject of a separate suit.
[4] The trial court made no reference to the Magazine Street restaurant, nor do the parties in their briefs to this court. Testimony at trial established the restaurant was owned by Hadd-Fitz, Inc.
[5] Alonzo testified total expenses for the renovation were $302,000.00, not including his own supervision cost of $60,000.00. Thus, the difference between $362,000.00 and the invoiced amount of $494,000.00 must represent a profit/overhead margin of $132,000.00 (26%).
[6] A few of the checks were issued to AMA Industries, the predecessor of CPA Construction Co., Inc.
[7] Defendants contend the Deadman's Statute (R.S. 13:3721 et seq.) should be utilized, requiring proof by the testimony of a credible witness other than the claimant. However, we have determined that the contract was between Chifici Enterprises, Inc. and CPA Construction Co., Inc. The debt or liability of a corporation is provable in the manner set forth in Article 1846. The statute limiting the use of parol evidence to prove the debt of a deceased person is not applicable to corporations. Fidelity Bank & Trust Co. v. Peace, 243 So.2d 335 (La.App. 4th Cir.1971).
[8] Nor did Alonzo offer documentary proof of his association with Brookfield Land Company and its possession of a contractor's license.
[9] A third check, No. 245 for $3,450.59, reflects it was issued for plumbing materials for Teton Street and 1713 Lake Avenue. This check was included in the aggregate sum without any attempt to apportion the funds between the two locations. However, defendants did not dispute at trial or on appeal the inclusion of check No. 245 in Exhibit P-8A.
[10] In light of our determination that CPA Const. Co., Inc. was fully compensated for the materials, labor and services associated with the renovations at 1713 Lake Avenue, we found it unnecessary to address the question of whether this case properly presented a corporate veil issue.