KLIEBERT, Judge.
The defendant, Barbara Chifici, individually and in her capacity as administratrix of her husband, Frank Chifici’s, succession, suspensively appealed from a judgment in the amount of $36,651.00 plus interest and costs rendered in favor of plaintiffs, Charles Alonzo .and CPA Construction Co., Inc., (CPA, Inc.). Plaintiffs also appealed.[1] For the reasons hereinafter stated, we amend the judgment by reducing the award to $25,000.00 and, as amended, affirm.
The litigation arose out of the following: The Chificis had Stanley and Associates, architects, draw plans for a residence to be constructed on their lot at # 17 Teton Street, Kenner, Louisiana. They contacted Charles Alonzo, Jr., a former neighbor and friend, for aid in its construction. He estimated the total cost of construction at $189,360.00, including supervision charges of $14,250.00 (See D-6). Alonzo, through his corporation, AMA Industries, Inc. (AMA, Inc.),[2] entered into an agreement “to supervise the construction of Frank and Barbara Chifici’s residence on Teton Street” (Emphasis supplied) in accordance with the plans and specifications prepared by Stanley and Associates. For his services he was to receive a fee of $14,250.00, payable in three installments as work progressed. The agreement, signed on August 29,1983, specifically stated . AMA assumes no liability other than the supervision of said residence in a workman like manner for the general contractor, Mr. Frank Chifici.”
Construction of the residence commenced in September 1983. During construction there were variations in the original plans, including the addition of a swimming pool, a fence, skylights, vinyl siding, subsurface drainage, custom doors and windows, copper gutters, and vaulted ceilings. Alonzo, through AMA, Inc., and subsequently CPA, Inc., supervised the construction of the residence to completion. The Chificis made direct payments to plumbing, electrical, air condition and heating subcontractors and for flooring, carpets and miscellaneous supplies. However, the majority of the construction costs were paid by AMA, Inc. and CPA, Inc. with funds made available by the Chificis. The residence was completed and the Chificis moved in during October 1984.
While supervising the construction of the residence Alonzo also supervised the renovation of a building on Lake Avenue leased by a Chifici corporation operating a restaurant on the premises. After the residence was constructed and the renovations on the restaurant building completed, a dispute arose between Alonzo and the Chificis as to compensation due Alonzo for his services.
*305 The dispute ultimately led to litigation. On July 25,1985 Alonzo and CPA, Inc. filed separate suits against Frank and Barbara Chifici relative to the construction of the residence and the restaurant renovations.[3] The petition relative to the residence was entitled “Breach of Agreement, Services Rendered and Damages,” and alleged that the Chificis were indebted to them for damages, labor, and services performed in the amount of $225,000.00 ($175,000.00 for labor and services and $50,000.00 for mental anguish).
The defendant, Frank Chifici, died on September 3, 1985. Barbara Chifici, individually and in her capacity as administra-trix of Frank’s estate, answered, admitting Alonzo supervised and directed the construction of the residence, but alleging Alonzo was paid in full for all expenditures made by him on their behalf, together with an undisclosed profit.[4]
At trial, notwithstanding the allegations of the petition, and over repeated objections of the defendants and cautions by the trial judge, plaintiff directed his efforts toward showing agreed upon modifications of the initial agreement to one fixing Alonzo’s compensation as though he had an agreement to act as a general contractor at a fixed price per square foot. In support of that effort, plaintiff introduced a so-called bill (P-6) dated 12/20/84 in which he claimed entitlement to compensation computed at $90.00 per square foot for 4200 square feet of living area, plus $30.00 per square foot for 2000 square feet of cabana, porches, and patios, plus $71,305.00 for extras for a total of $509,305.00 for constructing the residence. Against this total he showed a credit of $241,349.21 for payments previously made, thus leaving a balance due him of $267,955.79.
Alonzo further contended Frank Chifici had gone over the bills, checked off the amounts listed item by item and approved same. From this his counsel argued the Chificis had acknowledged the indebtedness; therefore, this modified the contract and the resulting claim was for the balance due on an open account. In support of Alonzo’s contentions and his counsel’s arguments he offered, over objections of defense counsel, the testimony of David Steece, who said he was present at the meeting where Alonzo contends Frank acknowledged the indebtedness. Under the dead man’s statute, LSA-R.S. 13:3721-22, Alonzo was required to prove the modification of the contract by the testimony of one credible witness other than the claimant. Although counsel argues Steece corroborated Alonzo’s contention, the trial court did not accept it as such but rather said “but that testimony [Steece’s] in my opinion did not establish a debt ...” it only indicated “... to me that certain documents were exchanged and checked off by the parties and a figure was mentioned ... not the figures on these papers specifically but a general figure ...” Additionally over objection of defense counsel that it was privileged information, Alonzo offered the testimony of Mr. Mike Phillips, a former counsel of defendants in this litigation, to the effect that as a friend he had interceded in the dispute prior to the time it matured into litigation. Initially Frank indicated to him he would consider paying Alonzo but later vehemently denied he owed Alonzo anything. Others also testified that Frank vehemently denied owing anything to Alonzo.
The trial court rejected counsel’s open account argument and concluded there never was a meeting of the minds relative to the work to be performed, the costs involved, or the compensation to be paid for the services. Therefore, he held no agreement or contract existed under which Alonzo and/or CPA, Inc. was entitled to recover on a square foot basis and relegated plaintiff’s claim to one in quantum meruit.
*306 Aside from the validity of defendants’ objections of admissibility based on the contentions some evidence went beyond the pleadings and was in violation of the dead man’s statute, the record simply does not support plaintiff’s contentions and arguments; nor, does it show that the trial judge erred in his conclusion above stated. Moreover, Alonzo’s testimony self destructs. For example, he testified to computing the estimated cost of constructing the 3700 square feet of living area and the 1100 square feet of porches, etc. in the originally designed plans at $42.00 and $33.00 per square foot. Notwithstanding, however, in preparing the so-called bill he utilizes $90.00 and $30.00 per square foot without any itemization or effort to show the changes which resulted in the house being, as he contends, more luxurious and consequently more costly. At the same time he adds to the square foot price $71,-000.00 for extras not originally called for in the plans. Nor does the so-called bill give credit for the admitted payments made by the Chificis directly to the plumbing, electrical, air condition and heating subcontractors. Simply put, Alonzo failed to carry the burden of proof necessary to support his claimed compensation.
Thus we cannot say the trial judge erred in his evidentiary rulings during trial, or in his analysis and reasons, or in his conclusions that this was not a suit on open account and no agreement or contract existed under which plaintiffs were entitled to recover on a price per square foot basis. The fact that Alonzo fits the definition of a contractor under the state licensing statute (LSA-R.S. 37:2150 et seq.) is not as he argues dispositive of the issue of whether he is entitled to a fixed price per square foot.
If Alonzo opts to perform services without a fixed agreement as to the price to be obtained for same, his claim, if any he has, is to be fixed under the principles established in La.C.C. Article 1965, sometimes erroneously referred to by the courts as “quantum meruit”. See Morphy, Makofsky & Masson, Inc. v. Canal Place 2000 et al, 538 So.2d 569 (La.1989).
Based on his findings and conclusions the trial judge proceeded to compute an award utilizing the following formulae: Cost plus supervision, less amounts previously paid, equals amount due. In applying the for-mulae he used $268,000.00 as the cost expended by Alonzo and $241,349.00 as the credit due the Chificis for prior payments. To the difference of $26,651.00 he added $10,000.00 as a supervision fee and rendered judgment in favor of plaintiffs in the amount of $36,651.00. As did the trial judge, we note that the “mass confusion,” the “divergent testimony,” the way in which the exhibits were presented, the inadequate accounting records, and the co-mingling of the projects makes the establishment of a definitive amount due to Alonzo a herculean task.
On appeal both parties contest the figures used by the trial judge. We agree he erred in making the computations.
Alonzo testified that his out-of-pocket expenses were “around” $268,000.00. In support of his testimony he introduced checks written through his corporations totalling $204,719.00, and insinuated that the difference was in cash payments. Also introduced as P-5 was an en globo packet of invoices said to total $268,000.00 (subject to modification if the total proved incorrect). Alonzo made no effort to match the invoices to checks. The Chificis produced the testimony of an expert accountant. He testified that the P-5 invoices totalled $251,485.00, including one by Alonzo for supervisory fees of $48,000.00. Using the general ledger of CPA, Inc. (D-l) he said the expenditures reflected in the ledger totalled only $243,568.00, of which amount $43,612.08 resulted from two unexplained and unsupported journal entries made in July 1985 (ten months after the house was completed). Alonzo claimed the entries reflected cash expenditures made by him.
The $241,349.00 credit for prior payments utilized by the trial judge was the same amount reflected by Alonzo on the so-called bill, P-6. Alonzo acknowledges that he previously computed the credit for prior payments at $241,349.00 but contends he made a mathematical error overstating *307 the credit by $10,000.00, and further contends that the $241,349.00 included $30,-000.00 in cash which was subsequently applied to the restaurant renovations by this court. Mrs. Chifici testified that payments to Alonzo “I would think were in the neighborhood of $225,000.00 to $235,000.00.” She introduced copies of checks written to AMA Industries, Inc., CPA, Inc. or Alonzo totalling $162,000.00. She said the balance was paid in cash and barter, but had no idea of the amount of cash paid.
In using $268,000.00 as the amount of the invoices, the trial judge overlooked the fact that the invoices (P-5) totalled, as testified to by the expert witness, $251,485.00, and that this total included an invoice for supervisory fees by Alonzo for $48,000.00. Thus, the amount expended by plaintiff on behalf of the defendants, exclusive of supervisory fees, utilizing the invoices would be $203,485.00 ($251,485.00 minus $48,-000.00). This closely compares to the can-celled checks for expenditures submitted by plaintiffs totalling $204,719.00 (P-4).
Also, in using $241,349.00 as the credit for prior payments, the trial judge did not consider Alonzo’s contention that in computing the credit he overstated the amount by $10,000.00 and that this court applied $30,000.00 of the cash he acknowledged receiving to the restaurant renovation project. The defendants agree the credit was overstated by $10,000.00, and we note that in Alonzo v. Chifici, supra, this court held that $30,000.00 of the cash Alonzo acknowledged receiving and applying to the Teton Street project were funds of Chi-fici Enterprises, Inc. and could only be applied to the corporate obligation. Utilizing the acknowledgments by Alonzo to determine the prior payments would result in a credit of $201,349.00 ($241,349.00 less $40,-000.00).
Although plaintiffs are entitled to compensation for supervising the construction of the defendants’ home, we hold the plaintiffs have failed to prove by a preponderance of the evidence that they have expended in the construction of defendants’ residence any amount in excess of the funds advanced by the defendants. This leaves for consideration the fixing of the supervisory fee.
The trial judge awarded $10,000.00 for supervisory fees. Plaintiffs contend the award is inadequate. We agree. The initial contract provided for fees of $14,-250.00. This amounted to approximately 7% of estimated construction costs of $189,-000.00. After the house was completed Alonzo submitted a bill to his corporation for supervision in the amount of $48,000.00 (D-5). This was approximately 10% of his contended value of the residence. We conclude the expenditures by plaintiffs totalled $204,719.00. Mrs. Chifici testified they paid out directly to subcontractors some $45,000.00. Thus, construction cost of the residence rounds out to $250,000.00. Applying the higher percentage, i.e., 10% to this, produces a supervision fee of $25,-Q00.00.
For the reasons stated therefore we amend the judgment of the trial court to reflect a judgment in favor of plaintiffs and against defendants in the amount of $25,000.00 and, as thus amended, affirm. Each party is to bear his own cost of the appeal.
AMENDED AND, AS AMENDED, AFFIRMED.

. The Chificis moved to dismiss the Alonzo appeal on the grounds the motion listed their counsel, James Shields, as the aggrieved party rather than his clients. We refused to dismiss the appeal on this technicality. In brief and in oral argument we were requested to reconsider our decision on the motion to dismiss. We decline to do so.

. Although the initial contract was with AMA Industries, Inc. and Alonzo commenced the work through it, subsequently Alonzo performed through CPA, Inc., which corporation was not incorporated until January 1984. Since the record does not indicate how the substitution occurred, we have followed the lead of both parties by merely considering CPA, Inc. as AMA’s successor corporation.

. The litigation involved in the renovation of the restaurant building on Lake Avenue is not before us on this appeal. We considered the restaurant renovation suit in Alonzo v. Chifici, 526 So.2d 237 (5th Cir.1988) writ denied 527 So.2d 307, 530 So.2d 74 (La.1988).

. The answer also contained a reconventional demand; however, no effort to prove damages was made at the trial.