657 So.2d 464 (1995)
Joseph L. SMITH, III, et al., Plaintiff-Appellee,
v.
ARCADIAN CORPORATION, Arcadian Fertilizer, L.P., et al., Defendant-Appellants.
No. 95-97.
Court of Appeal of Louisiana, Third Circuit.
May 31, 1995.
*465 J.J. McKernan, for Joseph L. Smith, III et al.
R. Joshua Koch Jr., Gregory Preston Massey, James R. Sutterfield, Daniel A. Tadros, Ralph D. McBride, Ileana M. Blanco, Richard Sanders, for Arcadian Corp., et al.
Caleb H. Didriksen, III, Michael D. Carbo, Denise A. Bostick, for Lexington Ins. Co., et al.
Rudie Ray Soileau Jr., Randy Donato, for Phoenix Assurance PLC, et al.
Huntington Blair Downer Jr., for Insurance Co. of North America.
Terrence Charles McRea, for Industrial Risk Insurers, et al.
Allen L. Smith Jr., Stepheanie A. Landry, for Arthur G. McKee and Davey McKee.
Mark N. Bodin, for Stami-Carbon B.V., Stami-Carbon N.V. & DSM N.V.
William Joseph Mize, David Ross Frohn, for Chicago Bridge & Iron Co.
Before DOUCET, C.J., and THIBODEAUX and PETERS, JJ.
DOUCET, Chief Judge.
These ten consolidated cases concern the applicability of the peremptive period provided in La.R.S. 9:2772 to claims arising out of the failure of a high pressure reactor used in a fertilizer plant.
In 1964, Olin Corporation (Olin) contracted with Arthur G. McKee, Inc. (predecessor to Davy-McKee & Company) to design a urea production plant at the Olin facility in Westlake, Louisiana. The project included a urea autoclave, a high pressure reactor used to convert ammonia carbamate and water to urea. This piece of equipment was known as the R-2 reactor. In 1965, Chicago Bridge & Iron (CBI) built the reactor vessel using a design provided by McKee. CBI delivered and installed the vessel. In 1989, Olin sold the ammonia and urea plant to a predecessor of Arcadian Corporation.
On July 28, 1992, there was an explosion at the plant. The explosion was caused by the rupture of the R-2 reactor. As a result of the explosion, a number of claims for personal injury and property damage were brought against Arcadian Corporation, Arcadian Fertilizer, L.P., Arcadian Partners, L.P. (Arcadian) and their insurers. The claims were later consolidated.
On December 2, 1993, Arcadian filed third-party claims against Arthur G. McKee, Inc. and Davy-McKee & Company (McKee). McKee moved for summary judgment, alleging that Arcadian's third party claim had been perempted pursuant to La.R.S. 9:2772. The trial court granted the motion and rendered judgment in favor of McKee dismissing the third party demand of Arcadian and its insurers. Arcadian appeals.

CONTINUANCE
Arcadian argues that the trial court erred in failing to grant it a continuance of the hearing on the motion for summary judgment under La.Code Civ.Proc. art. 967. La. Code Civ.Proc. art. 967 provides that the trial court may grant a continuance where the party opposing a motion for summary judgment shows the court that he cannot present by affidavit facts essential to justify his opposition. McKee filed its motion for summary judgment on June 2, 1994. The hearing on the motion was set for June 30, 1994. On June 23, 1994, Arcadian filed a memorandum in opposition to McKee's motion *466 for summary judgment. In that memorandum Arcadian included a section entitled "request for further discovery" which included a request for a continuance. No other motion for continuance was filed. Arcadian did not request that the motion be set for a hearing. At the hearing on McKee's motion for summary judgment, Arcadian argued the motion for summary judgment without requesting that the motion for continuance be heard or objecting to the failure to try the motion. Under the circumstances, Arcadian waived its objections to the trial court's failure to rule on its motion for continuance and abandoned the motion. Pursuant to La.Code Civ.P. art. 1635, it may not now raise this issue on appeal. See Cedotal v. Hopkins, 589 So.2d 20 (La.App. 1 Cir.1991).

SUMMARY JUDGMENT
We must next determine whether McKee was entitled to summary judgment.
"Appellate courts review summary judgments de novo, applying the same standards of review used by trial courts in rendering the judgments at the district court level. Reynolds v. Select Properties, Ltd., 634 So.2d 1180, 1183 (La.1994). A motion for summary judgment is properly granted if there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. The mover bears the burden of proving that no genuine issue of material fact exists and that he is entitled as a matter of law to the requested judgment. All summary judgment evidence is scrutinized closely and any inferences to be drawn from it are viewed in a light most favorable to the party opposing the motion. In addition, all allegations made by the opposing party are taken as true and any doubt arising between his allegations and the mover's is resolved in his favor. Self v. Walker Oldsmobile Co., Inc., 614 So.2d 1371 (La.App. 3rd Cir.1993)."
Hartman v. Vermilion Parish Police Jury, 94-893 (La.App. 3 Cir. 3/1/95), 651 So.2d 476. Accordingly, in order to obtain a summary judgment, McKee had to eliminate all issues of material fact with regard to the peremptive period provided for in La.R.S. 9:2772, by showing that the statute was applicable to the third party demand of Arcadian, that the peremptive period had run and that it was entitled to judgment as a matter of law.
Arcadian contends that McKee failed to carry its burden of showing that La.R.S. 9:2772 is applicable to this claim.
La.R.S. 9:2772 has been amended several times since its enactment in 1964. However, the evidence of record indicates that the original version of the statute is applicable here. Affidavits of George Jones and Richard Campbell, both Olin employees at the time Olin owned the facility, were introduced in support of McKee's motion. Those affidavits state that the reactor was delivered in 1965 and that Olin began possessing it at that time. Arcadian has introduced nothing to dispute this information. La.R.S. 9:2772 as it existed at that time provided that:
"No action, whether ex contractu, ex delicto or otherwise, to recover on a contract or to recover damages shall be brought against any person performing or furnishing the design, planning, supervision, inspection or observation of construction or the construction of an improvement to immovable property:
(a) More than ten years after the date of registry in the mortgage office of acceptance of the work by owner; or
(b) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than ten years after the improvement has been thus occupied by the owner; or
(c) If the person furnishing the design and planning does not perform any inspection of the work, more than ten years after he has completed the design and planning with regard to actions against that person.
Section 2. The causes which are pre-empted within the time described above include any action:
(a) For any deficiency in the design, planning, inspection, supervision or observation of construction, or in the construction of any improvement to immovable property;

*467 (b) For damage to property, movable or immovable, arising out of any such deficiency;
(c) For injury to the person or for wrongful death arising out of any such deficiency; and
(d) Any action brought against a person for the action or failure to act of his employees.
This peremptive period shall extend to every demand whether brought by direct action or for contribution or indemnity or by third party practice, and whether brought by the owner or by any other person."
Several criteria must be evaluated to ascertain whether this statute is applicable to the situation before us in this case. However, if the statute is otherwise applicable, the peremptive period would have begun to run on June 30, 1966 at the latest. Arcadian's action against McKee would have been perempted as of June 30, 1976. After that date no right would have existed to be enforced. Bunge Corp. v. GATX Corp., 557 So.2d 1376 (La.1990).
In ascertaining the applicability of the statute we will first deal with Arcadian's contention that the reactor was not an immovable. In Lopez v. Chicago Bridge and Iron Co., 546 So.2d 291 (La.App. 3 Cir.), writ denied, 551 So.2d 1323 (La.1989), this court dealt with the same issue and, in fact the same reactor. This court in that case explained that:
"Tracts of land, with their component parts, are immovables. LSA-C.C. Art. 462. Buildings and other constructions permanently attached to the ground are component parts of a tract of land when they belong to the owner of the ground. LSA-C.C. Art. 463.
In P.H.A.C. Services v. Seaways Intern., 403 So.2d 1199 (La.1981), the Supreme Court commented:
`Constructions other than buildings are now classified as movables unless they are component parts of a tract of land. To be a component part of a tract of land, a construction must meet two requirements: it must be permanently attached to the ground, and it must belong to the owner of the ground.'"
Id., at 298.
In that case, the court found no evidence of record to indicate that the ground and the construction belonged to the same owner. In the absence of evidence of that fact, the court found that the autoclave remained a movable construction under La.Civ.Code art. 463 and the provisions of La.R.S. 9:2772 are inapplicable. In the case presently before the court, the record does show that both the land and the reactor belonged to Olin from 1965 through 1989.
Arcadian argues that the reactor was not an improvement to an immovable because it was not permanently attached to the ground. The record establishes that the reactor is 85 feet tall and measures 6 feet in diameter. It weighs 140 tons when empty. It is fastened into the ground with concrete. It is surrounded by steel scaffolding and walkways which attach it to the building. Pipes attach it to the other equipment used in the plant's processes. Arcadian has introduced nothing to dispute this information or to establish facts which would tend to suggest that the reactor is a movable. Accordingly, we conclude that the evidence of record shows the reactor to be an immovable and that no question of material fact remains as to this issue.
Additionally, Arcadian asserts that La.R.S. 9:2772 is inapplicable to sales. Arguing that the contract between McKee and Olin was one of sale, not a construction contract, Arcadian contends that La.R.S. 9:2772 is inapplicable to its claims against McKee.
"Although the Civil Code clearly contemplates a distinction between sales and construction contracts, it defines the contract of sale in very general terms. The judiciary has developed several tests for determining whether a given contract is a contract of sale or a construction contract. In Acadiana Health Club, Inc. v. Hebert, 469 So.2d 1186, 1189 (La.App. 3rd Cir.1985) the court notes:
`There are three major factors in determining whether a contract is a contract of sale or a contract to build or to *468 work by the job. First, in a contract to build, the `purchaser' has some control over the specifications of the object. Second, the negotiations in a contract to build take place before the object is constructed. Lastly, and most importantly, a building contract contemplates not only that the builder will furnish the materials, but that he will also furnish his skill and labor in order to build the desired object. Duhon v. Three Friends Homebuilders Corporation, 396 So.2d 559 (La.App. 3 Cir.1981); Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961).'
Under the `value test' the court determines whether the labor expended in constructing the item, or the materials incorporated therein, constitute the `principal value of the contract.' Price v. Huey Childs Builder, Inc., 426 So.2d 398 (La. App. 2nd Cir.1983) writ denied 433 So.2d 164 (La.). Building or construction contracts involve primarily the furnishing of labor and contractual skills."
Alonzo v. Chifici, 526 So.2d 237, 241 (La.App. 5 Cir.), writ denied, 527 So.2d 307 (La.1988).
In this case the contract between McKee and Olin specifies that it is for the design and construction of a urea plant. McKee is designated the "Contractor." Olin reserved the right to review and approve "all of Contractor's energy and material balances, designs, drawings, Equipment and materials specifications, construction specifications, and vendor and subcontractor selection, including approval of vendors' drawings." All purchase orders were to contain the statement that: "The items purchased hereby are for use in a construction project of Olin Mathieson Chemical Corporation." Further, the contract was negotiated before the construction of the urea plant. Finally, the contract indicates that McKee was to supply not only materials but its skill and labor in designing and constructing the plant. The contract states that:
"... Contractor shall perform all services required to design and construct the Plant in accordance with the Specifications and within the "Battery Limits", as defined in the Specifications, including without limitation: the furnishing of all architectural and engineering services; the procurement, expediting, and delivery to the Project Site of all Equipment and Materials; the furnishing of all labor and supervision, tools, construction machinery and supplies; and the performance of all other services which are necessary to design, construct, place in operation and test the Plant and to alter the same, if necessary to meet the Performance Guaranties."
Applying the value test, the reactor was only a part of the entire construction, and did not constitute the principal value of the contract. The record indicates that McKee was paid over $4,000,000 for its work under the contract. The documents introduced by Arcadian in opposition to the Motion for Summary Judgment indicate that the cost of the reactor was less than $200,000.
The Court in Conmaco, Inc. v. Southern Ocean Corp., 581 So.2d 365 (La.App. 4 Cir.), writ denied, 586 So.2d 533 & 534 (La.1991) distinguished the cases relied on in Alonzo, 526 So.2d 237, finding a different standard to be applied where (as in this case) a third party manufacturer is involved, saying that:
"The distinguishing factor in this case is that a third party actually supplied the labor and materials necessary for the construction of the object of the contract. McKissick as manufacturer designed and constructed the block, supplying the labor and materials. The contract between Ocean Salvage, the purchaser, and Conmaco, the seller, merely involved the transfer of the block, after its completion, from the manufacturer to the purchaser."
Id., at 370.
Here Arcadian essentially argues that CBI manufactured the reactor and that McKee simply transferred it to Olin. However, we find Conmaco distinguishable from the case before us. As the court stated in Conmaco, where a contract contains aspects of both construction and sale, the court must determine which of the obligations is fundamental. The rules applicable to that obligation will apply. In Conmaco, the primary obligation and the object of the contract was delivery of a crane block. Here the primary and fundamental obligation was the design *469 and construction of a urea plant. The manufacture and installation of the reactor was only a part of the larger obligation. The evidence of record leaves no issue of material fact as to this point.
Arcadian further argues that even if R.S. 9:2772 bars its claims for design and/or construction deficiencies, it does not perempt the cause of action for failure to warn. Arcadian's third party demand against McKee contains the following allegations with regard to failure to warn:
"52
As a direct and proximate result of the above-described conduct of the third-party defendants, the R-2 reactor vessel was unreasonably dangerous because, at the time it left the control of one or more manufacturers, it deviated in a material way from one or more manufacturers' specifications or performance standards for the reactor vessel, or from otherwise identical reactor vessels manufactured by one or more of the same manufacturers.
53.
As a direct and proximate result of the above-described conduct of the third-party defendants, the R-2 reactor vessel may have been unreasonably dangerous because, at the time it left the control of one or more manufacturers, an alternative design existed for the reactor vessel, which was capable of preventing Arcadian's damages, and the likelihood that the reactor vessel's design would cause Arcadian damage, together with the gravity of that damage, outweighed the burden on the manufacturers of adopting such an alternative design, together with any adverse effect of such alternative design on the utility of the product.
54.
As a direct and proximate result of the above-described conduct of the third-party defendants, the R-2 reactor vessel may have been unreasonably dangerous because an adequate warning about the reactor vessel was not provided, and, at the time the reactor vessel left the control of one or more manufacturers, the reactor vessel possessed a characteristic that might have caused damage, and one or more manufacturers failed to use reasonable care to provide adequate warning of such characteristic and its danger to users and handlers of the R-2 reactor vessel."
Arcadian contends that these allegations state a cause of action for failure to warn which is independent of design or construction issues and not subject to the peremptive period of La.R.S. 9:2772. We do not agree.
In our opinion, Arcadian's amended petition is alleging a defect in the design or manufacture of the reactor.
"The instruction and warnings given with respect to the operating capabilities and limitations of a product are a significant part of its overall design. Reed v. John Deere, 569 F.Supp. 371 (M.D.La. 1983); LeBouef v. Goodyear, 451 F.Supp. 253, 57 (W.D.La.1978); See also Rey v. Cuccia, 298 So.2d 840 (La.1974), Sec. 402A Restatement of Torts 2nd, Comment J. A properly designed product must include warnings or instructions so that users of the product can be aware of its limitations. Without the proper warnings the design of a product may be unreasonably dangerous."
Tenneco Oil Co. v. Chicago Bridge & Iron Co., 495 So.2d 1317, 1323 (La.App. 4 Cir.), writ denied, 497 So.2d 1015 (La.1986).
Accordingly, we find that the allegations of failure to warn are allegations of a design defect and are thus subject to the peremptive period of La.R.S. 9:2772.

CONCLUSION
The trial court correctly concluded that McKee has resolved in its favor all issues of material fact with regard to the applicability of La.R.S. 9:2772 in this case. Accordingly, summary judgment was properly granted. As a result, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by Arcadian.
AFFIRMED.