**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 4, 2009

No. 08-30729

Charles R. Fulbruge III
Clerk

TRADEWINDS ENVIRONMENTAL RESTORATION, INC

Plaintiff - Appellant

v.

ST TAMMANY PARK LLC

Defendant - Appellee

COLONY INSURANCE COMPANY

Third Party Defendant-Appellee

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

Before WIENER, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Plaintiff-Appellant Tradewinds Environmental Restoration, Inc. ("Tradewinds") appeals the district court's grant of summary judgment in favor of Defendant-Appellee St. Tammany Park, LLC ("STP"). For the following reasons, we affirm.

## FACTS AND PROCEEDINGS

STP owned an apartment complex in Covington, Louisiana, that was damaged by Hurricanes Katrina and Rita (the "Hurricanes"). STP was advised by its insurer, Colony Insurance Company ("Colony"), to begin mold remediation

immediately after the Hurricanes to avoid any additional damage. Following the recommendation of one of its contractors, STP contacted Tradewinds. The parties negotiated and executed an agreement dated September 8, 2005, by which Tradewinds would provide emergency remediation and restoration. STP paid Tradewinds a $20,000 deposit at the time the contract was signed.

STP alleges that Tradewinds provided to STP pricing lists for different types of work and equipment, but that STP never accepted those quotes. Nevertheless, Tradewinds completed the work contemplated by the contract by September 15, 2005. For the most part, this work consisted of delivering, installing, and operating industrial air dryers to extract moisture from the complex. Tradewinds submitted three invoices to STP, for a total of approximately $245,000, and STP paid an additional $70,000 on top of the $20,000 deposit. However, STP refused to pay the remainder of the bill, allegedly because Tradewinds failed to provide documentation justifying the invoiced amount.

In February 2006, Tradewinds filed this action against STP and one of STP's principals, Brian Campbell,[1] based on diversity jurisdiction, to recover the balance due on the invoices. STP filed a counterclaim against Tradewinds and a third-party complaint against its insurer Colony. STP moved for summary judgment against Tradewinds, arguing that the requirements for the formation of a contract were not met, the alleged contract lacked an agreement as to price, and the contract was null because Tradewinds was not a licensed contractor in Louisiana.

---

[1] The claims against Brian Campbell were dismissed in a separate summary judgment order and are not at issue in this appeal.

The district court granted STP's motion for summary judgment based on the third ground, finding that Tradewinds provided mold remediation services in violation of Louisiana's licensing requirements. It held that the contract with STP was absolutely null and Tradewinds could only recover the costs of the materials, services, and labor provided. Following entry of the summary judgment order, STP and Tradewinds stipulated that, subject to Tradewinds's appeal, the $90,000 already paid by STP covered Tradewinds's costs in performing the contract, and that Tradewinds owed no refund to STP. Accordingly, the district court entered final judgment awarding no damages to either party.[2]

Tradewinds now appeals the district court's grant of summary judgment. Also before this court is STP's motion to strike certain portions of the record excerpts submitted by Tradewinds that are otherwise not part of the record on appeal.

## STANDARD OF REVIEW

"This court reviews a district court's grant of summary judgment de novo, applying the same legal standards as the district court." *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005). On review of a grant of summary judgment, "[t]he evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant." *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 465 (5th Cir. 2005). Typically, "[s]ummary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of

---

[2] The district court awarded $30,000 to STP on its third-party claim against Colony, but this award is not at issue in this appeal.

law." *Condrey*, 429 F.3d at 562 (quotation omitted); *see also* FED. R. CIV. P. 56(c). We also review *de novo* the district court's interpretation of state law and give no deference to its determinations of state law issues. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 239–40 (1991).

## DISCUSSION

The Louisiana legislature has enacted a broad licensing scheme for contractors within the State, designed for "the protection of the health, safety, and general welfare of all those persons dealing with persons engaged in the contracting vocation, and the affording of such persons of an effective and practical protection against the incompetent, inexperienced, unlawful, and fraudulent acts of contractors with whom they contract." LA. REV. STAT. § 37:2150. Pursuant to § 37:2160, it is "unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor under the provisions of this Chapter." A contractor is defined broadly, as:

> any person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment, or installing the same for any building . . . for which the entire cost of same is fifty thousand dollars or more when such property is to be used for commercial purposes . . . .

LA. REV. STAT. § 37:2150.1.

The Revised Statutes also contain specific licensing requirements for individuals and entities that perform mold remediation. *See* LA. REV. STAT. §§ 37:2181–2192. Section 37:2185 thus provides that "[b]eginning July 1, 2004, no person shall engage in or conduct, or advertise or hold himself out as

engaging in or conducting the business of, or acting in the capacity of a person who conducts mold remediation unless such person holds a mold remediation license as provided for in this Chapter." The term "mold remediation" is defined as the "removal, cleaning, sanitizing, demolition, or other treatment, including preventive activities, of mold or mold-contaminated matter that was not purposely grown at that location." LA. REV. STAT. § 37:2182(4). Like the general licensing provisions, the mold remediation requirements were expressly designed to protect the public. *See* LA. REV. STAT. § 37:2181 ("The legislature hereby declares that it is in the best interest of the citizens of the state to require the licensure and regulation of those persons who perform mold remediation.").

Under the Louisiana Civil Code, "[p]ersons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity." LA. CIV. CODE art. 7; *see also* LA. CIV. CODE art. 2030 ("A contract is absolutely null when it violates a rule of public order, as when the object of the contract is illicit or immoral."). Louisiana courts have long recognized that statutory licensing requirements "were enacted to protect an interest vital to the public order," and have relied on these Civil Code articles to invalidate contracting agreements entered into with unlicensed contractors. *Hagberg v. John Bailey Contractor*, 435 So.2d 580, 584–85 (La. App. 1983); *see also W. Baton Rouge Parish Sch. Bd. v. T.R. Ray, Inc.*, 367 So.2d 332, 334 (La. 1979) (holding that a contract for architectural services was invalid because the architectural firm had not secured a license to practice architecture from the Louisiana Board of Architectural Examiners). Contrary to Tradewinds's contention, this rule of "absolute nullity" is not limited to public works contracts, and has been equally applied to void agreements between

private parties. *See, e.g., Alonzo v. Chifici*, 526 So.2d 237, 240-43 (La. App. 1988) (nullifying a renovation agreement between a restaurant owner and an unlicensed contractor); *Touro Infirmary, Preferred Continuum Care-New Orleans, LP v. Travelers Prop. Cas. Co. of Am.*, No. 06-3535, 2007 WL 496858, at *2–5 (E.D. La. Feb. 13, 2007) (unpublished) (holding that a contract to repair Katrina damage entered into between a hospital and an unlicensed contractor is an absolute nullity and thus "deemed never to have existed").

Tradewinds concedes that it applied for a Louisiana mold remediation license on September 28, 2005 and that it did not receive the license until February 16, 2006. It is therefore undisputed that Tradewinds was not licensed as a contractor or a provider of mold remediation services at the times that it executed and performed the agreement with STP. Nor does Tradewinds properly challenge the district court's finding that it performed mold remediation services for STP.[3] Accordingly, the district court correctly concluded that Louisiana's rule of absolute nullity for a contracting agreement entered into without the benefit of a contractor's license would typically limit STP's recovery to "the actual cost of materials, services and labor." *Alonzo*, 526 So.2d at 243.

Tradewinds however contends that the decision of the Louisiana State Licensing Board for Contractors (the "Licensing Board") to loosen its enforcement of the licensing statutes in the immediate aftermath of the Hurricanes protects its agreement with STP from this general rule of absolute

---

[3] In its opposition to summary judgment, Tradewinds unsuccessfully argued that the work it performed for STP did not qualify as mold remediation. For the first time in its reply brief, Tradewinds challenges the district court's finding on this issue. The argument is waived because it was not raised in Tradewinds's opening brief, and thus we decline to consider it. *See Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 594 (5th Cir. 2006).

6

nullity. Tradewinds relies on an affidavit by Charles E. Marceaux, the Executive Director of the Licensing Board, that states that, for several months following the Hurricanes, the Licensing Board decided to "delay active and aggressive enforcement of licensure laws pertaining to demolition and debris removal and stay aggressive enforcement of other licensure laws." According to Tradewinds, the district court's holding of absolute nullity imposes on Tradewinds "the harshest enforcement possible" of Louisiana licensing requirements, in contravention of the Licensing Board's decision.

The Licensing Board is responsible for the enforcement of the licensing requirements for contractors and providers of mold remediation services. LA. REV. STAT. § 37:2153. As one district court recently noted, an administrative agency such as the Licensing Board has "broad discretion in deciding to what extent to undertake enforcement." *Trade-Winds Envtl. Restoration, Inc. v. Stewart*, No. 06-3299, 2008 WL 236891, at *4 (E.D. La. Jan. 28, 2008) (citing *Massachusetts v. EPA*, 549 U.S. 497, 527 (2007)). However, Tradewinds itself acknowledges that the Licensing Board's discretion in conducting licensing enforcement does not give it authority to suspend the licensing requirements.

Indeed, in times of emergency or disaster, Louisiana law recognizes that the Governor of Louisiana has the power to:

> [s]uspend the provisions of any regulatory statute prescribing the procedures for conduct of state business, or the orders, rules, or regulations of any state agency, if strict compliance with the provisions of any statute, order, rule, or regulation would in any way prevent, hinder, or delay necessary action in coping with the emergency.

LA. REV. STAT. § 29:724. It is undisputed that no executive order suspending Louisiana licensing laws was executed in the aftermath of the Hurricanes. As

the Marceaux affidavit recognizes, the Licensing Board's decision to loosen licensing enforcement was a "common sense approach" taken "in the absence of Executive Orders from the Governor's Office." Further, the affidavit notes that the suspension of enforcement was not absolute, since "the Board took such action as it believed necessary if the facts appeared that the actions of a contractor would be detrimental to the public." The licensing laws at issue therefore remained valid statutory requirements, the enforcement of which was only temporarily relaxed. *See Stewart*, 2008 WL 236891, at *6 (concluding that "the Board's policy of lax enforcement, while likely a valid exercise of administrative power, did not change the fact that the statutes in place still represented the legal requirements for contractors in order to enter into valid contracts"). Accordingly, we agree with the district court that the Licensing Board's decision to loosen its enforcement of licensing requirements in the aftermath of the Hurricanes did not suspend the requirement that contractors performing mold remediation in Louisiana be licensed in the State.[4]

---

[4] Tradewinds attaches to its briefing copies of two Louisiana state court judgments from the Civil District Court for the Parish of Orleans and the District Court for the Parish of Jefferson—both of which deny summary judgment under similar circumstances, apparently finding merit in the unlicensed contractor's reliance on the Licensing Board's decision to suspend licensing enforcement. However, the unreported decisions of state trial courts are not binding on this court. *See, e.g., Roecker v. United States*, 379 F.2d 400, 406 (5th Cir. 1967) (noting that a federal court need not defer to state trial court decisions, particularly when they are unpublished). In one of those state cases, the defendant filed a writ application with the Louisiana Fourth Circuit Court of Appeal requesting review of the summary judgment denial, which was denied. While this court generally seeks guidance from state appellate courts, we need not treat denials of supervisory writs as precedents because they are not considered precedential under Louisiana law. *See In re Quirk*, 705 So.2d 172, 182 n.17 (La. 1997) ("The denial by the court of appeal of a writ application seeking to invoke that court's supervisory jurisdiction neither blesses nor adopts the lower court's factual determination or expressions of law." (internal quotation omitted)). Thus, none of the state court judgments cited by Tradewinds have any authoritative value.

Tradewinds also invokes the "emergency reciprocity of licensing" provisions of two interstate compacts. Specifically, the Interstate Emergency Preparedness and Disaster Compact provides that:

> Whenever any person holds a license, certificate, or other permit issued by any state evidencing the meeting of qualifications for professional, mechanical, or other skills, such person may render aid involving such skill in any party state to meet an emergency or disaster and such state shall give due recognition to such license, certificate, or other permit as if issued in the state in which aid is rendered.

LA. REV. STAT. § 29:733, art. 4. Similarly, under the Southern Regional Homeland Security and Emergency Preparedness Management Assistance Compact:

> Whenever any person holds a license, certificate or other permit issued by any party state to the compact evidencing the meeting of qualifications for professional, mechanical, or other skills, and when such assistance is requested by the receiving party state, such person shall be deemed licensed, certified, or permitted by the state requesting assistance to render aid involving such skill to meet a declared emergency or disaster, subject to such limitations and conditions as the governor of the requesting state may prescribe by executive order or otherwise.

LA. REV. STAT. § 29:751, art. V. Thus, both statutes have the effect—under certain conditions—of waiving Louisiana's licensing requirements in times of emergency for certain professionals licensed in other states.

Tradewinds may well be correct that those statutory provisions allowed it to circumvent Louisiana's strict licensing requirements in the aftermath of the Hurricanes. However, this argument was never presented to the district court and Tradewinds never mentioned the "emergency reciprocity of licensing" provisions until this appeal. "Generally, this Court will not consider an issue

that a party fails to raise in the district court absent extraordinary circumstances." *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 593 (5th Cir. 2006) (internal quotation omitted). "Extraordinary circumstances exist when the issue involved is purely a legal one and failure to address it would result in a manifest miscarriage of justice." *Id.* The applicability of the "emergency reciprocity of licensing" provisions is far from a "purely legal" issue, as it is premised on Tradewinds's proper licensing in another state—a factual question that the district court has never addressed. In light of the factual determinations necessary to resolve Tradewinds's new argument, we decline to consider it.

Furthermore, Tradewinds's licenses and qualifications in other states are not part of the record on appeal. Tradewinds seeks to supplement the record by attaching to its briefing copies of various licenses and other certifications, and STP has moved to strike these exhibits. It is well-established that

> [t]his court's inquiry is limited to the summary judgment record before the trial court: the parties cannot add exhibits, depositions, or affidavits to support their positions on appeal, nor may the parties advance new theories or raise new issues to secure reversal. Facts not presented at trial cannot be asserted on appeal.

*Topalian v. Ehrman*, 954 F.2d 1125, 1131 n.10 (5th Cir. 1992) (internal citation omitted). These exhibits therefore constitute an improper attempt to introduce new evidence on appeal and are stricken from the record.[5]

## CONCLUSION

---

[5] STP's motion to strike also covers the two Louisiana state court judgments issued after the district court's grant of summary judgment in this case and attached to Tradewinds's briefing on appeal. *See supra* note 4. We have found no authority supporting STP's contention that these exhibits should be stricken as well.

For the foregoing reasons, the judgment of the district court is AFFIRMED and STP's motion to strike is GRANTED with respect to the materials submitted by Tradewinds for the first time on appeal concerning its licenses and certifications in other states.