# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 3, 2011

Lyle W. Cayce
Clerk

No. 10-30447

TRADE-WINDS ENVIRONMENTAL RESTORATION, INCORPORATED,

Plaintiff-Appellant,

v.

STEWART DEVELOPMENT, LIMITED LIABILITY COMPANY; STIRLING PROPERTIES, INCORPORATED; TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CV-3299

Before GARWOOD, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Trade-Winds Environmental Restoration, Inc. appeals the district court's grant of partial summary judgment in favor of Defendants-Appellees Stewart Development, LLC, Stirling Properties, Inc., and Travelers Indemnity Company of Connecticut, and the district court's order denying Trade-Winds' motion for reconsideration. At issue is whether (1) Trade-Winds' contract with Stewart Development was null and void under Louisiana law, and (2) the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

district court abused its discretion by denying Trade-Winds' motion for reconsideration because Trade-Winds sought relief on a new legal theory. We AFFIRM.

I

Stewart Development owned a building in Metairie, Louisiana that was damaged by Hurricane Katrina. Stirling was the leasing manager and agent for the damaged building. On September 22, 2005, Stirling entered into a contract with Trade-Winds. The contract required Trade-Winds to perform mold-remediation work on the damaged building.

At the signing of the contract, Trade-Winds did not hold a license to perform as a general contractor or a mold-remediation contractor in Louisiana. Trade-Winds later applied for a mold-remediation license on September 28, 2005 and received it on February 16, 2006. Trade-Winds alleges that it completed the work on March 11, 2006.

In June 2006, Trade-Winds filed this suit in the Eastern District of Louisiana, alleging breach of contract against defendants-appellees, for failure to pay approximately $1.65 million out of the $9 million total bill. Defendants filed counterclaims, alleging, *inter alia*, that Trade-Winds was not licensed to perform mold-remediation work, and therefore, the contract was null and void under Louisiana law. The district court agreed, and in January 2008, granted partial summary judgment, holding that "Plaintiff's claims against Defendant Stewart Development are, therefore, limited to damages under the theory of unjust enrichment."

In February 2010, after the district court granted Trade-Winds' motion to reopen the litigation, Trade-Winds filed a motion for summary judgment, arguing that the Interstate Emergency Preparedness and Disaster Compact, La. R.S. 29:721, *et seq.*, and the Southern Regional Homeland Security and Emergency Preparedness Management Assistant Compact, La. R.S. 29:751 (together, emergency reciprocity of licenses statutes), authorized out-of-state

entities to perform license-required work (such as mold remediation) in Louisiana without Louisiana licenses during a declared State of Emergency. The district court treated the motion for summary judgment as a motion to reconsider its prior ruling as to the legal validity of the contract. The district court, in its April 2010 order, denied Trade-Winds' motion, affirming its prior ruling that the contract was null and void.

Shortly thereafter, both parties stipulated that the amount already paid to Trade-Winds exceeded the amount Trade-Winds was entitled to under an unjust-enrichment theory. Therefore, the district court's decision terminated Trade-Winds' claims. The parties jointly moved for an order under Rule 54(b) certifying the district court's orders as final judgments. The district court granted the motion, and Trade-Winds timely appealed both orders. We review each order in turn, beginning with the January 2008 order granting partial summary judgment for defendants-appellees.

## II

This court reviews the grant of a summary judgment motion *de novo*, applying the same standard that governed in the trial court. *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006). In deciding whether fact issues exist, a court "must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Commerce & Indus. Ins. Co. v. Grunell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002). Because this court's jurisdiction is predicated on the federal diversity statute, Louisiana substantive law governs this dispute. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). We review *de novo* the district court's interpretation of state law and give no deference to its determination of state law issues. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 239-40 (1991).

Under Louisiana law, it is "unlawful for any person to engage in or continue in this state in the business of contracting, or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor under

3

the provisions of this Chapter." La. Rev. Stat. § 37:2160A(1). The Revised Statutes also contain specific licensing requirements for individuals and entities that perform mold remediation. *See* La Rev. Stat. §§ 37:2181-2192. Louisiana courts have long recognized that a contracting agreement entered into without the benefit of a contractor's license is null and void. *See, e.g.*, *Hagberg v. John Bailey Contractor*, 435 So. 2d 580, 584-85 (La. App. 3 Cir. 1983); *Alonzo v. Chifici*, 526 So. 2d 237, 243 (La. App. 5 Cir. 1988); *see also* La. Civ. Code art. 2030 ("A contract is absolutely null when it violates a rule of public order, as when the object of the contract is illicit or immoral.").

It is undisputed that under Louisiana law, Trade-Winds was a "contractor" that entered into a contract to perform "mold remediation" without a state-required license to perform general contractor or mold-remediation work. Trade-Winds contends that its contract was not void due to the Louisiana State Licensing Board for Contractors' decision to relax enforcement of its licensing requirements for a 90-day period immediately following Hurricane Katrina.[1] This party, with this counsel, has already made this argument before this court. We rejected it.[2] *See Trade-Winds Envtl. Restoration, Inc. v. St. Tammany Park,*

---

[1] Trade-Winds also notes that, since the district court's January 2008 order, a Louisiana state court has denied motions for summary judgment requesting a declaration that a contract entered into by an out-of-state contractor during the 90-day suspension of licensing enforcement period was null and void. *See, e.g.*, *The Happy Closing v. Chestnut Props., LLC*, No. 2006-2549, Div. "F", Civil District Court for the Parish of Orleans, State of Louisiana. Trade-Winds contends that these decisions, as well as the subsequent writ denials by the appeals courts stands as persuasive state-law authority for this court to follow. Trade-Winds made a similar argument in *St. Tammany Park*, and we rejected it. *See Trade-Winds Envtl. Restoration, Inc. v. St. Tammany Park,* 578 F.3d 255, 261 n.4 (5th Cir. 2009) (noting that the unreported decisions of state trial courts are not binding on this court).

[2] Trade-Winds fails to note our decision in *St. Tammany Park* in its opening brief. After defendants-appellees pointed out this omission, Trade-Winds attempted to distinguish the case by arguing that in *St. Tammany Park*, Trade-Winds did not have a license at the time it entered the contract nor during its performance, but that here, Trade-Winds did finally obtain a license about a month before completion of the project. We find this unpersuasive. Our holding in *St. Tammany Park* concerning the validity of the contract turned on the question of whether the contractor had a license at the time it entered into the contract, not

*LLC*, 578 F.3d 255, 260 (5th Cir. 2009). In *St. Tammany Park*, we expressly held that "Louisiana's rule of absolute nullity for a contracting agreement entered into without benefit of a contractor's license would typically limit [plaintiff's] recovery to the actual cost of materials, services and labor," and that "the Licensing Board's decision to loosen its enforcement of licensing requirements in the aftermath of the Hurricanes did not suspend the requirement that contractors performing mold remediation in Louisiana be licensed in the state." *Id.* at 260-61 (citation omitted).

Based on the controlling precedent, we affirm the district court's January 2008 order granting partial summary judgment to defendants-appellees.

### III

We now consider the district court's April 2010 order denying Trade-Winds' motion for summary judgment as to the applicability of Louisiana's emergency reciprocity of licenses statutes.

The district court properly treated Trade-Winds' motion for summary judgment as a motion for reconsideration of its January 2008 ruling holding that the contract was null and void. This court reviews a district court's denial of a request for reconsideration for abuse of discretion. *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993).

Trade-Winds' new argument that Louisiana's emergency reciprocity of licenses statutes apply to the contract at issue could have been raised in its January 8, 2008 response to defendants-appellees' motion for partial summary judgment. Instead, Trade-Winds belatedly raised the argument two years later. In light of the fact that nothing precluded Trade-Winds from raising this

---

on whether the contractor eventually procured a license during performance. Trade-Winds also argues that this case is different from *St. Tammany Park* because here, defendants-appellees knew that Trade-Winds did not have a license. However, the Civil Code provides that "[a]bsolute nullity may be raised as a defense even by a party who, at the time the contract was made, knew or should have known of the defect that makes the contract null." La. Civ. Code art. 2033.

argument in its January 2008 response, the district court did not abuse its discretion by declining to address Trade-Winds' new legal argument.[3]

AFFIRMED.

---

[3] Trade-Winds's failure to cite our *St. Tammany Park* opinion in its opening brief, filed several months after our opinion in that case was issued, falls well short of fulfilling counsel's duty of candor to the court.  Counsel is reminded that practice before this court is a privilege, not a right.