# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60021
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

July 22, 2016

Lyle W. Cayce
Clerk

LINDALEE SLEGELMILCH,

Plaintiff - Appellant

v.

PEARL RIVER COUNTY HOSPITAL AND NURSING HOME; STEVE
VAUGHAN, in his individual capacity and in his official capacity as Chief
Executive Officer; SHERRY GRADY, in her official capacity as Human
Resources Director,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:14-CV-409

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

Plaintiff–Appellant Lindalee Slegelmilch appeals the district court's
grant of summary judgment to Defendants–Appellees on two claims brought
under 42 U.S.C. § 1983—a First Amendment retaliation claim and a due

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 16-60021

process claim. As to her First Amendment retaliation claim, we agree with the district court that the actions taken by Defendants would not chill a person of ordinary firmness. As to Slegelmilch's due process claim that Defendants failed to provide her with a name-clearing hearing, we agree with the district court that Slegelmilch failed to introduce any evidence with respect to a necessary element of that claim, namely that the charges against her were made public. Accordingly, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff–Appellant Lindalee Slegelmilch was formerly employed as a therapist by Defendant–Appellee Pearl River County Hospital and Nursing Home (the Hospital). At all relevant times, Defendant–Appellee Steve Vaughn was the chief executive officer and administrator of the Hospital, and Defendant–Appellee Sherry Grady was the human resources director of the Hospital. The Hospital terminated Slegelmilch's employment on October 29, 2013.[1] As its reason for termination, the Hospital stated that Slegelmilch's work performance had "not met expectations" because she had not entered original signatures in individual patient charts consistent with Medicare policies and procedures. On October 29, 2013, Slegelmilch sent a letter to Grady requesting a meeting with Vaughn. Following Slegelmilch's meeting with Vaughn in the following month, she sent a letter on December 17, 2013, to the President of the Board of Directors of the Hospital requesting a meeting with the Hospital's board. On December 23, 2013, Vaughn sent a letter informing Slegelmilch that he was upholding the decision to terminate her employment.[2]

---

[1] Slegelmilch claims that she was not notified of her termination at that time and that she believed she had been placed on administrative leave.

[2] Slegelmilch claimed she never received this letter. She further asserted in the district court, and continues to assert on appeal, that she did not learn of her termination until January 2014.

No. 16-60021

On January 27, 2014, Slegelmilch sent a letter to Carrie Rowden, the Executive Director of the Mississippi State Board of Nursing Home Administrators (BONHA), alleging that Grady, Vaughn, and two other Hospital employees engaged in "unethical behavior" and "unethical conduct." Vaughn subsequently sent a complaint letter to the Mississippi Board of Examiners for Social Workers and Marriage and Family Therapists (the Board). As the district court noted, Vaughn alleged, *inter alia*, the following in the complaint letter:

> (1) that [Slegelmilch] "falsified Medicare documentation by using a template with a copied signature on the progress notes instead of signing with an original or electronic signature as required by CMS rules."
> (2) that [Slegelmilch] violated Board rules 2.1(A)3.g "Conduct involving dishonesty, fraud, or attempted deception["]; and 3.1(b)(2) "Engaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public in the course of professional services or activities.["]
> (3) that [Slegelmilch] was "involved in conduct involving dishonesty, fraud, or attempted deception by her actions" and was terminated "after a thorough investigation of the allegation regarding fraudulent violation of signature requirements."[3]

Slegelmilch filed the instant suit on October 24, 2014, asserting two causes of action under 42 U.S.C. § 1983. Specifically, she alleged that Vaughn filed his complaint with the Board in retaliation for her statements to the BONHA about Vaughn (and others) in violation of her First Amendment rights. She further alleged that Defendants violated her due process rights by failing to provide her with a name-clearing hearing as to her termination.

---

[3] In response to these allegations, the Board sent Vaughn a letter on November 20, 2015, stating that Slegelmilch "failed to meet organizational policy" and that the Board had "conclude[d] its investigation of th[e] complaint with a letter of advisement to the licensee pursuant to Section 73-53-23-6 of the MS Code."

3

No. 16-60021

The district court granted summary judgment to Defendants on December 14, 2015. The court rejected Slegelmilch's First Amendment retaliation claim, explaining that "[t]he crux of Plaintiff's claim is that the fact alone of a complaint including allegedly false accusations damaged her, which is not enough" to make out "an actionable First Amendment claim pursuant to § 1983." The court also rejected Slegelmilch's due process claim. The court noted that, to succeed on such a claim, a plaintiff must show that the charges against her were made public and held that Slegelmilch had introduced "no admissible evidence [showing] that the Hospital made public any of the charges against [her]."[4]  Slegelmilch timely appealed the district court's judgment on January 11, 2016.

## II. STANDARD OF REVIEW

This court "review[s] a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers*, 755 F.3d at 350 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[T]his court construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)). However, a plaintiff's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory

---

[4] Slegelmilch also brought two state law claims, and the district court declined to exercise supplemental jurisdiction over those claims after dismissing the § 1983 claims. Those state law claims are not at issue in this appeal

allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted) (per curiam). "Conclusional allegations and denials, speculation, and unsupported assertions are insufficient to avoid summary judgment." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011).

## III. SECTION 1983 CLAIMS

Slegelmilch argues on appeal that the district court improperly granted summary judgment to Defendants on the two claims she asserted under 42 U.S.C. § 1983. We address her First Amendment retaliation and due process claims in turn. On both claims, we conclude that the district court committed no error in granting summary judgment to Defendants.

## A. First Amendment Retaliation Claim

Slegelmilch claimed that Vaughn retaliated against her in violation of her First Amendment rights by filing a complaint against her with the Board in response to her complaint against Vaughn (and others) to the BONHA. Slegelmilch conceded in the district court and concedes on appeal that she cannot state a First Amendment retaliation claim based on her public employment, as she was not an employee of the Hospital at the time she filed her complaint with the BONHA. Accordingly, we evaluate her claim under the requirements applicable to private citizens. To succeed on such a First Amendment retaliation claim, a plaintiff must establish that

> (1) [she] [was] engaged in constitutionally protected activity, (2) the defendants' actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct.

*Culbertson v. Lykos*, 790 F.3d 608, 618 (5th Cir. 2015) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). Assuming, as did the district court,

No. 16-60021

that Slegelmilch was engaged in a constitutionally protected activity when she made her statements to the BONHA, we agree with the district court that, under Fifth Circuit precedent, the actions taken by Defendants would not chill a person of ordinary firmness. Therefore, the district court properly granted summary judgment to Defendants on Slegelmilch's First Amendment retaliation claim.

This court has previously stated that "criticism, an investigation (or an attempt to start one), and false accusations [are] all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence." *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999). Applying *Colson* to a private citizen retaliation claim under the First Amendment, this court explained "that retaliatory criticisms, investigations, and false accusations that do not lead to some more tangible adverse action are not actionable under § 1983." *Matherne v. Larpenter*, No. 99-30746, 2000 WL 729066, at *3 (5th Cir. May 8, 2000) (quoting *Colson*, 174 F.3d at 513). In an effort to show that she suffered "more tangible adverse action," Slegelmilch alleged that, because of Vaughn's retaliatory statements, she (1) was subjected to an investigation, (2) was forced to defend herself in this investigation, (3) has suffered "substantial stress and anxiety," (4) "has been unable to find new employment," and (5) has had her "lifelong career . . . tainted and destroyed." The district court correctly rejected each of these allegations, holding that Slegelmilch failed to show anything sufficiently tangible to support a First Amendment retaliation claim.

As to the first two alleged adverse actions, the district court was correct that criticisms, investigations, and false accusations are not enough to support a First Amendment retaliation claim, as this court has previously recognized in *Colson* and *Matherne*. Slegelmilch urges us to disregard *Colson* and *Matherne* as inapposite. For example, she argues that *Colson* is

6

No. 16-60021

distinguishable because, in that case, individuals attempted to recall a city councilman but were unsuccessful in "instigat[ing] a recall election." 174 F.3d at 500. Slegelmilch argues that, instead of Colson, this court should look to *Smith v. Winter*, 782 F.2d 508 (5th Cir. 1986), in which a recall election was successfully initiated. However, the fact that the attempt to hold a recall election failed does not render *Colson* inapposite to the instant case, and we decline to hold, as Slegelmilch apparently urges, that recall elections and investigations are equivalent. Indeed, the reason *Colson* controls our decision here is not because a recall election failed or succeeded but because the plaintiff in *Colson* was investigated by an assistant district attorney following allegations of criminal conduct.[5] 174 F.3d at 500. The investigation in *Colson* was at least as intrusive as the one conducted by the Board here. Accordingly, we decline Slegelmilch's invitation to disregard *Colson* and *Matherne* and, instead, agree with the district court that the investigation conducted by the Board into Slegelmilch's alleged wrongdoing is insufficient to support a First Amendment retaliation claim.[6]

With respect to her allegations of stress and anxiety, the district court correctly noted that, under Slegelmilch's theory, anyone who suffers stress as a result of government conduct could state a constitutional violation. However, because the "Constitution does not provide an *independent* right to be free from

---

[5] For the first time in her reply brief, Slegelmilch raises the argument that *Colson* is distinguishable from the instant case because she was forced to hire legal counsel to defend herself. This argument, however, is waived, as Slegelmilch failed to raise it in her opening brief. *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 260 (5th Cir. 2009).

[6] We similarly find that Slegelmilch cannot rely on *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), to show that the investigation in connection with Vaughn's complaint was sufficient to support a First Amendment retaliation claim. In *Bantam*, a public commission without authority to impose punishment on its own sent numerous notices to stop the sale of certain publications, which were followed by police visits and threats of criminal prosecution. *Id.* at 68. There is no evidence that any such conduct occurred here.

emotional distress," Slegelmilch cannot rely on her stress to support her First Amendment retaliation claim. *Flores v. City of Palacios*, 381 F.3d 391, 401 n.8 (5th Cir. 2004). Finally, Slegelmilch offers only conclusory allegations, with no supporting evidence, that Vaughn's filing of a complaint with the Board harmed her employment prospects or "tainted" her career. As discussed in greater detail in connection with her alleged due process violation below, there is no evidence that the Board ever publicized the complaint filed against Slegelmilch. Thus, she has failed to introduce any evidence that the alleged violation of her First Amendment rights caused harm to her career or employment prospects. Because Slegelmilch has not shown a genuine dispute of material fact as to whether "the defendants' actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in [constitutionally protected] activity," the district court committed no error in granting summary judgment to Defendants on Slegelmilch's First Amendment retaliation claim. *Culbertson*, 790 F.3d at 618 (quoting *Keenan*, 290 F.3d at 258).[7]

## B. Due Process Claim

Slegelmilch also claims that her due process rights were violated when Defendants failed to provide her with a name-clearing hearing in connection with her termination. "[A] constitutionally protected liberty interest is implicated only if an employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000) (quoting *White v. Thomas*, 660 F.2d 680, 684 (5th

---

[7] Because we agree with the district court that Slegelmilch created no genuine dispute of material fact as to whether Defendants' actions chilled her from engaging in protected activity, we need not and do not consider whether "the defendants' adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct." *Culbertson*, 790 F.3d at 618 (quoting *Keenan*, 290 F.3d at 258).

Cir. 1981)). To prevail on her § 1983 claim that the Hospital "infringed upon a cognizable liberty interest by denying" her a hearing to clear her name, Slegelmilch must show

> (1) that she was discharged; (2) that stigmatizing charges were made against her in connection with the discharge; (3) that the charges were false; (4) that she was not provided notice or an opportunity to be heard prior to her discharge; (5) that the charges were made public; (6) that she requested a hearing to clear her name; and (7) that the employer refused her request for a hearing.

*Id.* at 226. There is no dispute that Slegelmilch was discharged, that the charges made against her concerned the same conduct that was the basis of her discharge, or that she was not provided with a name-clearing hearing. However, even maintaining the district court's assumption that the allegations in the complaint to the Board were false, we find that the district court correctly concluded that "there is . . . no admissible evidence that the Hospital made public any of the charges against" Slegelmilch.

Slegelmilch argues that the act of submitting a complaint to the Board itself constitutes public disclosure. In support of this argument, Slegelmilch points to Mississippi law, which provides that "[i]t is the policy of this state that public records shall be available for inspection by any person unless otherwise provided by this chapter." Miss. Code Ann. § 25-61-2; *see also* Miss. Code Ann. § 25-61-5 (providing members of the public a right to inspect public records). She further argues that complaints filed with the Board do not fall within the limited exceptions to this policy. While these provisions of Mississippi law may support Slegelmilch's argument that there was a public disclosure here, she is not relieved of her burden to produce more than "conclusory allegations" and "unsubstantiated assertions" in order to withstand a motion for summary judgment. *Little*, 37 F.3d at 1075.

As the district court noted, "there is no evidence that the Board has taken any action against her license or that it has ever disclosed the Board Complaint

No. 16-60021

to potential employers or to anyone else for that matter." The district court held, based on this lack of evidence, that Slegelmilch's "unsupported assertion that she lost job opportunities as a result of the Board Complaint . . . is insufficient to meet the public disclosure prong." We agree. As we have held before, "[c]onclusional allegations and denials, speculation, and unsupported assertions are insufficient to avoid summary judgment." *Sanches*, 647 F.3d at 165. Accordingly, we find no error in the district court's grant of summary judgment to Defendants on Slegelmilch's due process claim.[8]

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[8] Although not explicitly challenged by the parties, we note that we find no error in the district court's decision to decline to exercise supplemental jurisdiction over Slegelmilch's state law claims.